HARRY C. HASKINS

v.

THOMAS F. RYAN.

[Decided May 28th, 1908.]

1. Where an original bill was demurred to, and the demurrer was sustained upon the ground (1) because it showed nothing more than an agreement to make an agreement, and (2) because it appeared that complainant was seeking to recover profits alleged to have been realized from the embodiment in a corporation of a scheme or idea communicated by complainant to defendant, this scheme or idea not having been protected by contract or statute against appropriation, and therefore not capable of legal ownership after communication; and such bill was thereupon amended with a view by additional allegation to cure its original defects—*Held*, that notwithstanding the changes in phraseology the bill as amended showed nothing more than an agreement to make an agreement.

On bill and demurrer.

*Mr. Richard V. Lindabury*, for the demurrant.

*Mr. Robert H. McCarter*, for the complainant.

STEVENS, V. C.

The original bill filed in this case was demurred to and the demurrer sustained. *71 N. J. Eq. (1 Buch.) 575.* It was held to be demurrable (1) because it showed nothing more than an agreement to make an agreement; (2) because it appeared that complainant was seeking to recover profits alleged to have been realized from the embodiment in a corporation of a scheme or idea communicated by complainant to defendant, this scheme or idea not having been protected by contract or statute against appropriation and therefore not capable of legal ownership after communication.

The complainant has amended his bill, and by additional allegation sought to cure its original defects. The question is whether he now shows a case of equitable cognizance.

Notwithstanding the changes in phraseology I still think that the bill, as amended, shows nothing more than an agreement to make an agreement. The pleader has, however, endeavored to make it appear that the defendant did something more than convert complainant's *ideas* to his own use. He tries to show that what was converted was property and not mere ideas. In this, I think, he has failed. It is difficult to ascertain from the bill as it now stands just what the claim is. There is a studied ambiguity about it which does credit to the pleader's ingenuity but does not elucidate the case. Haskins, it is said, had elaborated a scheme for combining the lead interests of the country. In connection with this scheme he had secured certain options to purchase plants. He presented this scheme to Ryan, a capitalist, and Ryan, so the bill alleges, became much interested in it, and referred Haskins to his attorney. The only direct allegation of what was given to the attorney is the following:

"And your orator further says that in compliance with said agreement with said Ryan he *offered* to submit and turn over to said Ryan, or his attorney, all his option renewals, other papers, data, estimates and other documents and information, in connection with or bearing upon his plans or scheme of combination, *and did so turn over and submit a large part of the same, or their results.*"

From this allegation it is utterly impossible to say what specific things or papers he did turn over. All that we know is that a plan was submitted which the attorney, after examining, endorsed as "comprehensive, feasible and attractive." Then the bill alleges that a company called the United Lead Company, was organized under Ryan's direction, substantially as planned, and that the complainant was left out in the cold. There is no direct allegation that Ryan agreed, for a definite price, to turn over to the company what Haskins had handed to his attorney, but the statement is that

"in the formation and exploitation of the said United Lead Company Ryan has made an enormous profit, both as promoter and otherwise;

not as mere promoter's profit but also in compensation for your orator's plans, scheme of combination, options, writings, documents, information, data and other property turned over to said Ryan or his agent by your orator."

The options here alluded to were, undoubtedly, property, but the bill, in the paragraph which 1 have first quoted, does not allege that any options were turned over. On the contrary, in paragraph five it is alleged that Ryan's agent himself procured options. If the complainant did, in fact, transfer options to Ryan he should have so charged; and even then all that he could claim, in the absence of specific agreement, would be damages for their wrongful conversion.

As to the documents there is nothing in the case to show that they consisted of anything more than a plan or scheme of combination embodying Haskins's ideas on the subject. These ideas, as I said in my former opinion, depended for their realization upon the concurring minds of many individuals, and were not Haskins's exclusive property, after communication. Undoubtedly ideas, if valuable or even thought to be valuable (supposing them to be such as the law approves of), may be the subject of bargain and sale. They may be the subject of contract, but they must be protected by contract. Their originator cannot give them out and then sue for an indefinite share of profits which someone else may make out of a venture in which he seeks to embody or utilize them.

It must be apparent to anyone who carefully reads the bill, as amended, that its whole scope is summed up in its only prayer for relief, and that is a prayer that Ryan may set forth how much profit he has realized from appropriating Haskins's plan of consolidation, and that he may be compelled to share his profit with complainant. The court is expected to apportion the shares, not on the basis of any agreement made, but on what it, in the exercise of a purely arbitrary discretion, may think under the circumstances to be right.

I am of opinion that the amendments do not substantially alter the case as originally presented, and I therefore advise that the bill be dismissed, for the reasons contained in my former opinion.