CHARLES A. MASLINE *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, Bridgeport, October Term, 1920.
WHEELER, C. J., BEACH, GAGER, CASE and CURTIS, JS.

The plaintiff, a former employee of the defendant railroad company, claimed to have acquired information of value in the operation of its road, which he would impart to the company for a percentage of the receipts derived by the company from its application and use, and a contract to that effect was entered into. There-

upon the plaintiff imparted to the defendant that it could make large sums of money by selling advertising space upon its real and personal property. Upon demurrer to the complaint it was *held:*—

1. That the defendant under the circumstances had the right to expect when the parties made their agreement that the railroad company was to obtain information in the true sense of that word, that is, of something which the railroad representatives did not know and which was not generally known in the railway world.

2. That courts would take judicial notice of the fact that the idea of selling advertising space is, and has been, for centuries at least, known to and used by the people of this and foreign countries; that the plaintiff's suggestion imparted nothing new, nor afforded any "information," in the sense which that word must bear in the present case, and therefore there was no valuable consideration for the defendant's promise.

3. That the defect of want of consideration, due to common knowledge and use, being a matter of judicial notice, might be taken advantage of upon demurrer as readily as though it had been specifically alleged.

4. That while an idea might undoubtedly be protected by contract, the plaintiff must either offer a new idea for such protection, or, if the idea was common knowledge, as in the present case, he must present a specific method of his own for the use and application by the defendant of the common idea; but that the plaintiff had done neither of these things.

5. That inasmuch as the defendant, in subsequently selling advertising space upon its property, made use of no scheme or device of the plaintiff and of no idea except one common to all mankind for ages, the plaintiff's statement of such use could not estop the defendant from continuing to sell such space nor impose upon the defendant an obligation to pay a percentage of the receipts derived therefrom to the plaintiff.

6. That there was no distinction between wall space and billboards on steam railroad property, and those on street railway or other property, which would render the plaintiff's idea original and novel as applied to the former.

Argued November 4th, 1920—decided February 21st, 1921.

ACTION to recover damages for breach of an alleged oral agreement to pay the plaintiff for valuable information which he claimed to be able to impart, whereby the defendant could earn large sums of money without expense to it, brought to the Superior Court in New

Haven County where successive demurrers to substituted complaints were sustained, first by *Warner, J.,* and later, *pro forma,* by *Kellogg, J.,* and judgment rendered for the defendant, from which the plaintiff appealed. *No error.*

The facts as alleged in the second substituted complaint and deemed to be admitted by the demurrer, are as follows:—

The plaintiff had been engaged for more than fifteen years as railway brakeman and baggage-master upon the defendant's road, and claimed, by his observation, experience and study, to have acquired valuable ideas with reference to the operation of railroads. On or about January 19th, 1914, the defendant was informed by the plaintiff that he had information of value in the operation of the defendant's road, by which, if applied by the defendant, it could earn at least $100,000 a year therefrom without any expense on the part of the defendant, and that the plaintiff would furnish the defendant this information for a valuable consideration. An appointment was made and on or about February 9th, 1914, the plaintiff and the defendant, the latter acting by one of its vice-presidents and another officer, met and entered into an oral agreement by which it was contracted and agreed that if the plaintiff would submit his proposition and if said proposition was adopted and acted upon by the defendant, the plaintiff should receive, as compensation for imparting said information, a percentage of the receipts therefrom equal to the percentage ordinarily charged by real-estate brokers upon rentals and sales effected by them, which said usual real-estate commission was five per cent. Thereupon, the plaintiff, in reliance upon the agreement, submitted and imparted to the defendant his proposition, to wit: "The selling of advertising space by the defendant and the displaying by it of adver-

tisements on its railway stations, depots, rights of way, cars and fences." The plaintiff further alleged that the defendant, by its officers, further agreed, as part consideration for the information furnished it, to employ the plaintiff to take charge of said advertising. The defendant immediately adopted and acted upon said proposition and sold advertising space as proposed, in its railway stations, depots, rights of way, cars and fences. Prior thereto the defendant had not sold advertising space or displayed advertisements as above. By reason of so selling advertising space and displaying advertisements, the defendant has made several millions of dollars, and will continue to earn similar large sums in the future. The defendant has refused to live up to its agreement, nothing has been paid, and the defendant has not employed the plaintiff and has expressly refused to allow the plaintiff to take charge of the advertising, though the plaintiff has always been ready and willing to take such charge.

To the complaint setting out the facts as in substance stated, the defendant filed a demurrer as follows:—

"1. It appears that the terms of the alleged agreement are vague, uncertain, and incapable of ascertainment or enforcement, and that by reason thereof no contract was ever made between the plaintiff and the defendant.

"2. It does not appear with respect to the allegations of paragraph 6 to the effect that the defendant agreed to employ the plaintiff to take charge of said advertising, for what time or for what pay, if any, said plaintiff should be employed, and the terms of said alleged agreement are too indefinite, vague, uncertain, and indeterminate to constitute a contract of employment.

"3. It appears that the information or suggestion given by the plaintiff to the defendant was not secret

or exclusive information in the knowledge of the plaintiff, but such as is perfectly obvious and well known to all men, and could not possibly be of advantage to the defendant, or have any market value so as to form the consideration for a contract.

"4. It does not appear that the information given or plan suggested was not already in the possession of the defendant, and a matter of common knowledge.

"5. It does not appear that the plaintiff's idea, plan or process, is, or could be, property, or constitute consideration for a promise."

The defendant also filed a motion which it is unnecessary to consider. The court sustained the demurrer *pro forma*. Judgment was rendered for the defendant, and the case comes to this court on the demurrer to the second substituted complaint.

*George E. Beers,* and *Moses Miller* of New York City, with whom was *William C. Rungee,* for the appellant (plaintiff).

*George D. Watrous* and *William B. Gumbart,* for the appellee (defendant).

GAGER, J. The plaintiff's case is founded on his claim as orginally presented to the defendant, that he had "information of value in the operation of the defendant's road" which he offered to communicate for a valuable consideration. It was agreed that if he would communicate the information to the defendant and the defendant used it, the plaintiff should receive five per cent of the receipts derived from such use. Plaintiff did communicate his information and the defendant used it, making thereby large sums of money, but has not paid the plaintiff his commission. The information communicated, pursuant to this proposition, was, as stated in

the complaint: "the selling of advertising space by the defendant and the displaying by it of advertisements on its railway stations, depots, rights of way, cars and fences." This all appears from the complaint, to which the demurrer was filed and upon which judgment was rendered.

Under the plaintiff's proposition to furnish "information of value," what should the defendant look for, what should it be entitled to learn in return for the conditional five per cent? Clearly information of value in the operation of the road. What did it get? The bald proposition "sell advertising space." The defendant in its demurrer, set out in full in the statement of facts, claims that this information furnishes no consideration for the claimed contract, because the idea was not new nor exclusively within the plaintiff's knowledge, but was perfectly obvious and well known to all men, and that it could have no market value so as to form the consideration for a contract; that it did not appear that the plan suggested was not already known to the defendant and a matter of common knowledge, and that the idea was not property, nor did it constitute consideration for a promise.

"Information" is defined to be knowledge communicated concerning some particular fact, subject, or event; and its synonyms are "intelligence," "news." Oxford Dictionary, by Murray. In Webster's New International Dictionary it is defined as "news; advices"; . . . "knowledge communicated by others or obtained by personal study and investigation; intelligence; knowledge derived from reading, observation, or instruction." An "informant" is one who "gives information." When information is proffered as the consideration for a contract, it is necessarily implied—is indeed of the essence of the proffer—that the information shall be new to the one to whom it is proffered.

A statement to one of what he already knows is not as to him information, but merely a statement of a fact already known. The imparting of information, in a situation like this, must involve an active process resulting in arousing or suggesting ideas or notions not before existent in the mind of the recipient; otherwise it is not information in the true sense of the term, although it may be a statement of fact.

When the representatives of the defendant met the plaintiff and made the agreement, they were entitled to assume that before they could be bound, or in any way obligated to the plaintiff, they were to obtain information in the true sense of the word, and, further, to assume that it would be a statement of something which they did not know and which was not generally known in the railway world. If the information in fact furnished by the plaintiff does not come up to the standard of his proposition, it counts for nothing.

The defendant was not to be precluded from the use thereafter of any common or well-known idea without payment to the plaintiff of a royalty or commission, merely because he chose to impart it as the information of value he had proposed to furnish and on the faith of which the defendant had entered into this agreement. In fact, there was nothing new or novel, nothing valuable in the abstract proposition, "sell advertising space." No way or method was suggested by the plaintiff of making the idea effective or valuable. No system of selling or of reaching advertisers was devised by the plaintiff or explained to the defendant. His proposition gave the defendant no more information than if he had said: "Carry more passengers or haul more freight."

We take judicial notice that the idea of selling advertising space is in the common knowledge and use of the people of this country as well as of foreign countries. It appears from the encyclopædias that wall

space, natural or artificial, has been used for advertising purposes at least from before the destruction of Pompeii to the present time. To such an extent has this use gone that many attempts have been made to stop its abuse. See article "Advertising," New International Encyclopædia. It is said that in England posters and placards in railway stations and upon public vehicles still embarrass the traveller who desires to find the name of a station or the destination of a vehicle. Encyclopædia Britannica, 11th Ed. (1910), article "Advertisement." Nothing, in fact, is better known than the use of space wherever available and obtainable for the display of advertisements, whether it is inside of buildings or on the outside, on billboards erected for the purpose or on the natural rock, the only limitation, apparently, being that it shall be open to a more or less extensive public view. We can recall no mercantile or trade practice—a practice also often extending to the inculcation of political and religious doctrines—more universally practiced and known than this of the use of space, necessarily wall space, natural or artificial, for advertising purposes. To communicate this idea gives no new knowledge, no information in the sense in which that word must be used in the present case.

"To take judicial notice is a function, and to apply it to the decision of causes a right, which appertains to every court of justice, from the lowest to the highest, and in the exercise of appellate no less than original jurisdiction." *Arthur* v. *Norfield Congregational Church*, 73 Conn. 718, 731, 49 Atl. 241. See also *Brown* v. *Piper*, 91 U. S. 37, 23 L. Ed. 200, and Rose's note on this case (8 Rose's Notes to U. S. Reps. pp. 859–867). As was said in *Fisher* v. *Jansen*, 30 Ill. App. 91, 92: "Courts will not pretend to be more ignorant than the rest of mankind."

The plaintiff contends that advantage cannot be taken upon demurrer of the defect of want of consideration due to common knowledge and use. We do not see why. If the record shows a proper subject of judicial notice, it is as much in the case and as much part of the record as though specifically alleged.

The plaintiff further says: "There is no rule of law that one can refuse to pay for what he has agreed to pay because it tells him nothing." And counsel say, well enough, one cannot refuse to pay for a book he has ordered because it tells him nothing new. But suppose, as here, that the agreement to pay is based on a condition implied in the nature of the proposition made, that information of value is to be furnished and the information furnished is not such because long known to everybody and suggestive of nothing new; then what is offered as consideration for the agreement turns out to be no consideration, and the agreement falls. It is like the case of the book ordered because it is represented that it will give certain specific information, and may be rejected for false representations.

Perhaps the most plausible argument of the plaintiff is, that the defendant had for several decades been running a railroad without carrying into effect the plan outlined by the plaintiff, that it received the plan from the plaintiff, agreeing to pay for it if used, and at once availed itself of the plan with financial benefit to itself. The fallacy here is that the plaintiff furnished no plan within the meaning of the proposition. The proposition to sell advertising space on defendant's property is an idea pure and simple. The plaintiff, assuming that the idea was his, the result of his studies, observation and experience as brakeman and baggage-master for fifteen years, attempted to protect this idea by the contract in question. An idea may undoubtedly be protected by contract. *Haskins* v. *Ryan*, 75 N. J. Eq. 332,

78 Atl. 566. But it must be the plaintiff's idea. Upon communication to the defendant it at once did appear that the idea was not original with the plaintiff, but was a matter of common knowledge, well known to the world at large. He had thought of nothing new, and had therefore no property right to protect which would make his idea a basis of consideration for anything. His valuable information was a mere idea, worthless so far as suggesting anything new was concerned; known to every one; to the use of which the defendant had an equal right with himself. The idea was not information of value which the defendant was entitled to expect under the proposition, for it is to be remembered that the claimed agreement was made before the disclosure of this idea. Now, this idea, which was no more his than the defendant's, was his only stock in trade. He offered no physical plan or device of his own for carrying the idea into effect. To furnish a consideration for a contract of this kind the plaintiff must upon his proposition either offer a new idea to be protected by the contract, or, if the idea is common, he must present a specific method of his own for the use and application by the defendant of the common idea. *Stein* v. *Morris*, 120 Va. 390, 91 S. E. 177; *Bristol* v. *Equitable Life Assur. Soc.*, 52 Hun (N. Y.) 161. The plaintiff has done neither of these things. Whether the defendant sees fit thereafter to sell space for advertising is immaterial. It manifestly uses no scheme or device of the plaintiff, and the idea itself is common to all, and the plaintiff, by stating such idea, cannot estop the defendant from the right to use it which it already had. His statement cannot impose upon the defendant the obligation of compensation for the use of an idea as much its own as the plaintiff's.

We cannot fail to notice that the plaintiff's argument largely proceeds upon the theory, implied at least, that

the nature of the information was before the defendant when it made this contract. Directly the contrary was true. The agreement was conditional upon receiving information of value. As shown above, such information was not received.

Finally, the plaintiff claims novelty and originality for his idea, because it was applied to steam railroads. We can see no such distinction between wall space and billboards on steam railroad property and on street railway and other property as will justify the claim. The situation is analogous to the often-cited case of *Brown* v. *Piper*, 91 U. S. 37, 23 L. Ed. 200, in which it was held, in substance, that the application of the judicially noticed process of freezing ice cream, to the freezing of fish, showed no exercise of inventive faculty or any new and original idea. The suggestion of placing circus posters upon a railroad freight house, instead of upon a farmer's horse shed, or that railroad property may be used for posting posters as well as any other property furnishing suitable space, carries no consideration as importing into the plaintiff's proposition an original element of value which would take it out of the general notion of selling advertising space.

The defendant bases its demurrer, in part, upon the indefiniteness, uncertainty and vagueness of the alleged contract, but in the disposition of the case already made it is unnecessary to discuss that phase of the demurrer.

The contract alleged is fundamentally defective for want of consideration.

There is no error.

In this opinion the other judges concurred.