## MOORE v. FORD MOTOR CO.
### No. 76.

Circuit Court of Appeals, Second Circuit.
July 14, 1930.

Leonard M. Wallstein, of New York City (Ralph M. Frink, of New York City, of counsel), for appellant.

Nicoll, Anable & Nicoll, of New York City (De Lancey Nicoll and De Lancey Nicoll, Jr., both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above).

It has not been seriously argued on this appeal that the plaintiff can recover for an infringement of his literary property, and we are in complete accord with the District Court's decision that no copying of the plaintiff's forms of expression was proved. Nor is there occasion to add anything to the lower court's statement of the law or findings of fact on this branch of the case.

Passing to the charge that the defendant appropriated the ideas embodied in plaintiff's plan, we may assume, without the necessity of decision, that the originator of a novel method of merchandising acquires a right akin to that recognized in the law in respect to a trade secret. See Peabody v. Norfolk, 98 Mass. 452, 458, 96 Am. Dec. 664; Bristol v. Equitable Life Assur. Soc., 132 N. Y. 264, 267, 30 N. E. 506, 28 Am. St. Rep. 568; Haskins v. Ryan, 75 N. J. Eq. 330, 332, 78 A. 566. Concededly, such a right, if it exists, may be lost by an unrestricted publication of the idea. Hence the plaintiff must first establish that his disclosure to defendant was made on such terms or under such circumstances as to imply a limitation upon the use to be made of it by defendant. It appears that on October 14, 1922, plaintiff wrote to Mr. Henry Ford that he would like an opportunity to submit a sales plan whereby he believed the sale of Ford cars could be greatly increased. To this letter, Mr. L. E. De Forest, an employee in defendant's sales department, replied as follows:

"If you will kindly write us in detail regarding the plan which you have in mind for increasing the sale of Ford cars, understanding that in doing so there would be no obligation on our part, we will be very glad to give

the matter our careful attention, and advise you whether or not we would be interested in the plan."

Thereupon plaintiff sent his letter of October 25th, submitting the plan "in compliance with the suggestions contained in your letter." After setting out his plan, his letter closed with the following paragraph:

"The above is a general idea of what I had in mind. I understand that it is subject to amendments and eliminations, but if it is usable I would like very much to aid in perfecting it. However, as called for in your letter, I am writing you with the understanding that there is no obligation on your part. You say in your letter that you will advise me whether or not you are interested in the plan and I hope you will do this."

By letter dated October 31, 1922, De Forest thanked plaintiff for submitting the proposition "for our consideration," and returned plaintiff's letter of the 25th, "as we would not be interested in the proposition."

Fairly construed, this correspondence means that the plan was submitted for consideration by the defendant with a view, "if interested," to negotiations for acquisition of the right to use the plan in its business; and defendant's precautionary phrase that it was to be received without "obligation on our part" means merely without obligation to accept the plan or to compensate plaintiff for submitting it; it does not mean that defendant was freed from any obligation not to appropriate it without plaintiff's consent. Cf. Press Pub. Co. v. Monroe, 73 F. 196, 198 (C. C. A. 2); Kiernan v. Manhattan Quotation Tel. Co., 50 How. Prac. (N. Y.) 194, 203; Pressed Steel Car Co. v. Steel Car Co.. 210 Pa. 464, 478, 60 A. 4; Pollard v. Photographic Co., 40 Ch. Div. 345, 349.

We come then to the main dispute, namely, whether the defendant in getting out its weekly purchase plan copied the idea from plaintiff's plan. Both plans relate to installment buying of automobiles and utilize the principle of systematically saving small sums to accumulate the large amount required as a down payment at the time the car is delivered to the purchaser. Each plan aimed to reach the relatively unexploited field of customers to be found among wage-earners and persons of small income. The plaintiff suggested monthly deposits of $25 to be made with the Ford agent and to draw interest at the rate of 10 per cent. per annum if allowed to accumulate until applied on the purchase price, but only 4 per cent. if withdrawn before. He emphasized the importance of a high interest rate as an incentive to prospective purchasers. The defendant's plan provided for weekly payments of a minimum of $5 to be deposited in a local bank at the bank's regular savings rate of interest and to be withdrawable only in case of emergency and with the approval of the bank and the local Ford dealer. The point of co-operation between the local bank and the local dealer and its advertising value to each was stressed. Other differences in detail will appear from a comparison of the two plans which are set forth in extenso in the opinion of the District Court.

The plaintiff testified on his own behalf and called no other witness. Having put in evidence his correspondence with defendant, the Ford weekly purchase plan sent out by defendant to its local dealers on March 30, 1923, and defendant's answers to interrogatories, he rested. To prove the origin and preparation of the Ford plan, the defendant called as witnesses its sales manager, Mr. Ryan, his assistant, Mr. Davis, and Mr. De Forest, with whom the plaintiff had corresponded. According to their testimony, Ryan and Davis formulated the Ford plan without discussion with De Forest, and without ever having seen or heard of plaintiff's plan or of his letters to the defendant. Ryan says that his idea originated in his knowledge that various Ford dealers were using some form of a deposit plan and that banks were attracting great resources through "Christmas Savings Clubs." He consulted Mr. Dunham, a banker of Detroit, Mr. Longley, the defendant's general counsel, and Mr. Edsel Ford, and during the months of February and March, 1923, the details of the plan were worked out by Mr. Ryan and Mr. Davis. If the testimony of these three witnesses be accepted as true, there was no copying of plaintiff's plan, his ideas had no influence on the genesis or content of the Ford plan, and no possible "property right" of the plaintiff was violated by the defendant.

The difficulty of proving a charge of piracy of ideas communicated to a defendant for a limited use is of necessity very great. A defendant's denial can seldom be met except by showing inconsistencies or circumstances which make it probable his denial is false. Here the positive testimony of Ryan and Davis must be wholly disbelieved in order to find for the plaintiff. De Forest also swears that he showed plaintiff's letter to no one, though he cannot say that some one may not, without his knowledge, have seen it while it was lying on his desk. The plaintiff attempts to discredit these witnesses by the fact

that papers representing four sales plans which Ryan testified were sources of ideas embodied by him in the Ford plan, were said by him to have been turned over to the defendant's attorneys at the beginning of the suit, and yet were not mentioned in defendant's answer to interrogatory 33, sworn to by De Forest on May 3, 1926. The inference plaintiff would have us draw is that, if in fact Ryan and Davis had had knowledge in 1923 of the four plans they now claim to have been sources, they would have mentioned them to De Forest before May, 1926, and he would not have answered the interrogatory as he did; in short, that the testimony as to the origin of the Ford plan is nothing but a recent fabrication.

De Forest's answer of March 3, 1926, to interrogatory 33 lists the names of seven Ford dealers, and says that they, "as well as many other persons * * * prior to 1922 utilized the method or idea for conducting business" as set forth in plaintiff's plan. Thereafter defendant was ordered to give the names of such other persons, and on May 3, 1926, De Forest verified a supplemental answer that he was without knowledge of other users. It may be conceded as somewhat strange that the four dealers whose methods of selling are particularly relied upon by Ryan as sources of his ideas should not have been known to De Forest or to the attorneys who prepared defendant's answers to interrogatory 33, even though the answer was listing prior users, the interrogatory not being expressly directed to ascertaining Ryan's sources of information. As to two of the four sources, however, there is corroboration of the testimony that they were in Ryan's possession in February, 1923, by letters addressed to him during that month by two sales agents, Williams and Ballard. It is suggested by the plaintiff that these letters were obtained later and antedated. There is no testimony to support this attack upon their authenticity, and the argument is based only upon the fact that they bear no regular receiving stamp such as appears on plaintiff's letter to De Forest. The Williams letter is proved only by the testimony of Ryan, but Ballard himself, who had no connection with defendant at the time of giving his deposition, testified positively to writing his letter of February 16, 1923, to Ryan. His testimony cannot be overthrown merely by the fact that the letter bears no receiving stamp, or that De Forest did not mention Ballard as a prior user.

While the defendant's failure to name in its answers to interrogatory 33 the four plans to which Ryan refers as sources of his ideas may perhaps supply some basis for suspicion, we cannot regard it as sufficient to justify an inference that all the testimony of Ryan and Davis was a perjured fabrication. Without such an inference, there is little to lead to the conclusion that the Ford plan was copied from plaintiff's. There are many differences in detail and emphasis. True, each plan embodies as its underlying principle the idea of systematically saving small sums until a large enough amount shall be accumulated to make the down payment, and each attempts, though in a different degree, to make the saving more attractive by allowing interest. This was a new sales policy for defendant. It is conceivable that the idea came from plaintiff's letter, if Ryan and Davis are lying. But it is equally conceivable that they obtained the idea elsewhere, as they say they did. The idea of systematic saving was not so novel or revolutionary that they were unlikely to get it elsewhere. Various Ford dealers had already adopted plans of accepting deposits to be accumulated for the down payment, and it would be most natural for Ryan, as sales manager, to know of them. Not all these plans—plaintiff contends none of them—emphasized regularity and system in making the deposits; but, if Ryan set out to standardize the plans, he would be likely enough to realize the value of regularity in deposits. The idea was old in Christmas Savings clubs, and it cannot be assumed that Ryan first learned of these from plaintiff's letter. The common elements in both the Ford plan and plaintiff's are not such as to make copying a more probable inference than the story which he and Davis tell upon the stand.

The trial judge has a better opportunity than have we to pass upon the credibility of witnesses, and his determination may not be lightly overridden, especially on an issue of veracity. Fuller v. Reed, 249 F. 158 (C. C. A. 1); American Rotary Valve Co. v. Moorhead, 226 F. 202 (C. C. A. 7); In re Slocum, 22 F.(2d) 282 (C. C. A. 2); Wald v. Longacre, 34 F.(2d) 25 (C. C. A. 3). Although he did not expressly say that he believed the defendant's witnesses, this is implicit in his finding that the plaintiff had not sustained the burden of proving that the defendant obtained its idea of the Ford weekly purchase plan from Mr. Moore. On this record, that conclusion is well justified.

This makes it unnecessary to discuss the affirmative defense of lack of novelty, although a large proportion of this voluminous record is concerned with earlier instances of

installment selling by Ford dealers and others, which embody with varying differences in detail, many, if not all, of the ideas that plaintiff claims to have been first formulated in his plan.

The decree is affirmed.