Bernice STEVENS, Plaintiff-Appellee,

v.

CONTINENTAL CAN CO., Inc.,
Defendant-Appellant.

No. 14693.

United States Court of Appeals
Sixth Circuit.

Sept. 28, 1962.

Rockwell T. Gust, Jr., and Harold A. Ruemenapp, Detroit, Mich. (Butzel, Eaman, Long, Gust & Kennedy, Detroit, Mich., on the brief; Rockwell T. Gust, Jr., Harold A. Ruemenapp, Detroit, Mich., of counsel), for appellant.

Frank C. Sibley, Detroit, Mich., for appellee.

Before WEICK and O'SULLIVAN, Circuit Judges, and BOYD, District Judge.

O'SULLIVAN, Circuit Judge.

This is an appeal by defendant-appellant, Continental Can Company, Inc. from a $30,000.00 judgment entered upon a

jury verdict, in favor of plaintiff-appellee Bernice Stevens. Plaintiff claimed that defendant appropriated and used, in the sale of picnic type paper plates and cups, a decorative scheme originated by her and communicated in confidence to one of defendant's employees. She relied upon an implied agreement by defendant to compensate her for such alleged original idea should defendant elect to use it.

Her idea consisted of a design for paper plates and cups with a simulated wood grain background upon which were superimposed log-marks.[1] Her evidence showed that this idea was communicated in confidence to an official of defendant on September 21, 1956 and that later in 1956 she delivered to defendant sketches of paper plates and cups depicting her decorative scheme. In 1958, defendant began marketing its "Chuckwagon" series of paper plates and cups. These items contained certain characters, either cattle brand marks or log marks superimposed upon a simulated wood grain background. They were sold in cartons having drawings of cowboys and other western-type figures on them and describing their contents as "Chuckwagon Bondware." Defendant marketed about one million dollars worth of its Chuckwagon series of plates and cups. To provide the jury with a measure of damages, plaintiff introduced in evidence, over defendant's objection, a contract which, in 1959, and during the pendency of the lawsuit, she obtained from American Lace Paper Co. By the terms of this contract that company agreed to pay her a royalty of 3% of its selling price on all articles sold by it incorporating her designs for place mats, doilies, napkins, etc., embodying by their decoration an historical motif of the lumbering industry. Under this contract she had been paid a total of $206.09 at the rate of $41.-22 per design. The jury's award obviously resulted from its allowance of a 3% royalty upon the total sales by defendant of its Chuckwagon series. A representative of American Lace Paper Company testified that the type of contract which his company made with plaintiff was unprecedented and was not usual in the industry. He knew of no other such contract ever having been made. The only other evidence of the worth of plaintiff's design came from one of defendant's employees who said that his company had never paid more than $1500.00 for any decorative design purchased by it.

Defendant asserted, in bar of plaintiff's claim, that her idea was not novel and was already in use in the production and sale of similar merchandise; and that the use of the decorative combination of cattle brand marks on a wood grain background for its Chuckwagon series was conceived and developed by its own staff prior to and unaided by any ideas conveyed to it by plaintiff.

The District Judge submitted for the jury's determination whether plaintiff's design was novel at the time she disclosed it, whether defendant used her idea or design and benefited therefrom and whether plaintiff's idea or design was disclosed in confidence to an agent of defendant under circumstances which reasonably indicated to defendant that plaintiff would be compensated for her idea or design if the defendant used it. On the question of damages he advised the jury that the evidence presented two measures for arriving at plaintiff's damages, the flat fee of $1500.00 testified as standard by defendant's witness, and the 3% royalty fee arrangement provided in plaintiff's 1959 contract with American Lace Paper Company. He stated that "Neither of these is binding upon you as jurors. You are instructed to use them for guidance as you see fit in arriving at what, in your opinion, is a proper measure of damages." Defendant's motion for a directed verdict at the conclusion of plaintiff's proofs, its like motion at the close of proofs, and its motion

---

1. Log-marks, so-called, consist of initials or simple designs which are impressed on logs for purposes of identification by the owners of the logs. See Whitman v. Muskegon Log Lifting & Operating Co., 152 Mich. 645, 648, 116 N.W. 614, 20 L.R.A., N.S., 984 (1908).

for judgment non obstante veredicto and for a new trial, were denied.

Defendant here seeks reversal upon the following four grounds: First, that the undisputed evidence established that the idea of superimposing brand marks/log marks on a wood grain background was not novel, was publicly known and already employed as a decorative design on merchandise similar to that here involved; Second, that the undisputed evidence established that defendant's own staff independently conceived and developed the decorative design for its Chuckwagon series of paper plates and cups; Third, that the District Judge erred in failing to give defendant's proffered instruction on its claim of independent conception; and, Fourth, that the District Judge erred in instructing the jury as to the measure of damages it could consider. On its points One and Two, defendant asks reversal with direction to enter judgment for defendant. It asks for a new trial on grounds Three and Four. Because we believe that defendant was entitled to a directed verdict on point One, we do not decide any of the other points raised.

■ Under familiar rules, in considering the sufficiency of plaintiff's evidence to make a case for the jury, we view it in its most favorable light, indulging on plaintiff's behalf all inferences legitimately drawn therefrom.

Plaintiff, Mrs. Stevens, had been interested for many years in the early history of Michigan's lumber industry. She has done considerable research into the subject. Included in her gathered material were the styles of a large number of log marks used by the logging companies to identify their logs. All of such log marks, however, were matters of public record in the counties of Michigan and had been compiled into books available at public libraries. Inasmuch as log marks were impressed usually upon the ends of logs, whenever logs were photographed or otherwise portrayed, the log mark always appeared upon a wood grain background. Mrs. Stevens testified that log marks on wood graining was as old as the Revolutionary War. Sometime prior to September 21, 1956, Mrs. Stevens had talked with the Harvey Paper Co. of Sturgis, Michigan, about its manufacturing a paper place mat in accordance with a design prepared by her. This design included a sketch of a lumbering scene surrounded by a border of log marks. The evidence does not disclose whether that company ever used her design. From her contact with the Harvey Company came the suggestion that she visit Continental Can Company to see if that company might, in some way, use her material on paper cups and plates. On September 21, 1956, she came to the Chicago office of defendant and saw its acting sales office manager, one Morrison. To him she showed various materials gathered in her research of the Michigan lumber industry—photographs of old scenes, historical text material, a sheet with a collection of log marks, and other miscellaneous items. She suggested that the "lore of the lumber industry" might be exploited in the decoration of paper cups and plates. While with Morrison, she sketched some log marks on a paper cup and a plate. She later forwarded additional material to Morrison including a sketch of cups and plates with log marks on a wood grain background. Her material was returned to Mrs. Stevens in December, 1956, with advice that Continental was unable to enter into her suggested promotion of the lumber industry motif.

When plaintiff was with Morrison, she announced to him that she was giving him her information in confidence. She stated that at that time she asked Morrison if he were deciding would he "pick this" and he replied that he would if the decision were up to him, but that he would have to confer with other officials of the company. She said that she told him she expected compensation if defendant should use "it" and that Morrision replied that "he did not know if, when—if they took it or not, what the percentage would be."

Defendant's art department considered that the marks on the paper plates and cups it produced were cattle brands. Plaintiff conceded that there is no difference between a cattle brand and a log mark; that "a mark by itself, or a design does not mean anything. If it is on a cow it is a cattle brand. If it is on a sheep it is a sheep brand. If it is on a log it is a log mark." She stated that she could not say that the markings on the plates and cups on defendant's Chuckwagon series were not in fact cattle brands although she states that some such marks were similar to some log marks in her collection. The word "Chuckwagon" could apply to a lumber industry motif as well as to a western motif. Plaintiff testified that the use of brand marks as part of a western motif decorative scheme was old. She said she did not go to defendant to sell it the western motif. That motif, she said, had been thoroughly exploited, that "crackerjack boxes, popcorn boxes, cereal boxes, television ads and everything else, had had all kinds of Western cattle brands, cowboys motifs, on them for years."

It was undisputed that competitors of defendant had, prior to plaintiff's visit to it, manufactured and marketed paper plates and cups with a simulated wood grain background and that defendant had done so itself. Also, prior to such visit, some flavors of Sealtest Ice Cream were marketed in paper cartons which had a wood grain background with cattle brands superimposed thereon. Such a decorative scheme was displayed in advertising material and depicted in merchandise catalogues.

We do not reach Continental's defense of independent conception and development of its Chuckwagon series. It is appropriate, however, to observe that defendant offered evidence, including that of disinterested witnesses, which, if true, established that the use of the involved decorative scheme on cups and plates had been planned and developed by it prior to plaintiff's visit to Morrison. This evidence was not impeached nor its credibility impaired.

It is difficult to find a precise category in which to fit plaintiff's asserted right to recover here. We may assume, for the purpose of this discussion, that until plaintiff talked to defendant's representative, no one had, as yet, manufactured picnic *plates and cups* with cattle brands or log marks placed on a simulated wood grain background. As shown by plaintiff's own proofs, however, there was nothing new in using a wood grain background on picnic plates and cups. Likewise, there was nothing new in putting cattle brands on a wood grain background as a decoration on cartons containing merchandise other than cups and plates. As noted previously, the use of cattle brands as the decorative motif on crackerjack boxes, popcorn boxes, and other sales devices was very old and had been thoroughly exploited. It is not clear from plaintiff's pleadings or from her argument here whether she claims that the novelty of her idea resided in a decorative scheme combining log marks and a simulated wood grain background or in an idea of putting the design on cups and plates. In her pleadings, she averred that her design was a design "containing wood graining and log and/or cattle brand marks." She emphasized the "historical background" to such design. She said that her motif was the combination of wood grain and log marks or cattle brands. In submitting the case to the jury, the District Judge defined plaintiff's design as an "idea of using log marks on a wood grain background." It is in this context that we decide the question presented.

■■ Neither the briefs of counsel nor our independent research has provided us with decided cases or textual discussion of sufficient analogy to be employed as precise precedents or authority for decision of the issue before us.[2] In general, it may be said that property rights may exist in copyrighted material (such as literary and musical composi-

---

2. See generally, Annotations, 104 A.L.R. 1357; 157 A.L.R. 1436; 170 A.L.R. 449.

**104**

tions), architectural designs, mechanical or scientific inventions, advertising slogans, original paintings and works of art. Liggett & Meyer Tobacco Co. v. Meyer, 101 Ind.App. 420, 194 N.E. 206, (1925); Aronson v. Baker, 43 N.J.Eq. 365, 12 A. 177 (1888); Kurfiss v. Cowherd, 233 Mo.App. 397, 121 S.W.2d 282 (1938); Booth v. Stutz Motor Car Co., 56 F.2d 962 (C.A.7, 1932); Bristol v. Equitable Life Assur. Soc., (1892) 132 N.Y. 264, 30 N.E. 506; 18 C.J.S. Copyright and Literary Property §§ 4, 10b. We find no case, however, where anything as simple as combining into a decorative scheme for picnic cups and plates, a wood grain background (already in use and well known) with cattle brands (long in use as a decoration on packages for merchandising) was held to be an original artistic scheme, work of art or a work of such novelty as to vest in its author a common law or statutory copyright or property right. Assuming, however, that such a decorative design creates a property right, it will not be accorded protection against use by others if it is not original with the person asserting the right to such protection or if such design is already in use and within public knowledge. Mitchell Novelty Co. v. United Mfg. Co., 199 F.2d 462, 465 (C.A.7 1952); DeFilippis v. Chrysler Corp., 53 F.Supp. 977, 980 (S.D.N.Y.1944), affirmed 159 F.2d 478 (C.A.2, 1947); Smoley v. New Jersey Zinc Co., 24 F.Supp. 294, 300 (D. N.J.1938). Ordinarily, the law will not imply a promise to pay one who voluntarily confers a benefit on another. Restatement of the Law of Restitution, Sections 2 and 112. Where, however, the benefit conferred was because of a voluntary disclosure made in confidence with the expectation of payment therefor, the law will provide a recompense. Hoeltke v. C. M. Kemp Mfg. Co., 80 F.2d 912, 922, 923 (C.A.4th, 1936); Booth v. Stutz Motor Car Co., 56 F.2d 962 (C.A.7th, 1932). Thus, if one to whom a plan, a design or scheme of value uses what is given in confidence and the information was conveyed under circumstances that the confider expected to be compensated, the law will imply a contract or promise to pay by the one obtaining the information. City Ice & Fuel Co. v. Bright, 73 F.2d 461, 464 (C.A.6th, 1934). But, in order for a recovery to be obtained for such a disclosure, the matter communicated must possess the quality of novelty in the legal sense. So here, the fact that plaintiff announced to defendant's agent that she was disclosing her design to him in confidence would not impose a duty upon defendant to pay her if the design was neither new nor novel. Smoley v. New Jersey Zinc Co., supra, 24 F.Supp. at 300; Hisel v. Chrysler Corp., 94 F.Supp. 996, 1002 (W.D.Mo.1951). She was a volunteer in talking of her design to defendant's agent who made no promise and did not, for defendant, agree to use her claimed original idea. Her idea or design was already in use and within public knowledge; we will not, nor could a jury, imply an agreement by defendant to pay her for using an allegedly novel design which was not such in fact.

The issue submitted to the jury was whether "the idea of using log marks on a wood grain background had been publicly used or publicly disclosed by the plaintiff *or by anyone else*, prior to the time the plaintiff disclosed said design to the defendant's agent Mr. Morrison." Had there been any factual issue about a prior public use, this would have been a proper instruction. But, under the undisputed evidence, there was no such issue. The evidence of the prior use of wood grain background by defendant and its competitors on cups and plates and the applying of cattle brands to a wood grain background by Sealtest was not challenged nor impeached by opposing evidence. Such evidence contained no inherent incredibility. There was, therefore, no issue on the point to be submitted to the jury. Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 343, 53 S.Ct. 391, 77 L.Ed. 819; Chesapeake & O. Ry. Co. v. Martin, 288 U.S. 209, 218–220, 51 S.Ct. 453, 75 L.Ed. 983; N. L. R. B. v. Ray Smith Transport Co., 193 F.2d 142, 145, 146 (C.A.5, 1951); Arnall Mills v. Smallwood, 68 F.2d 57,

59 (C.A.5, 1933); Benton v. Blair, 228 F.2d 55, 58, 61 (C.A.5th, 1956); Annotation 62 A.L.R.2d 1191. If we might assume that plaintiff's claim of novelty resided in her suggestion of putting an old and known design on plates and cups, such an abstract idea, even though later used by defendant, was not, in our opinion, a protected property right. 18 C.J.S. Copyright and Literary Property § 10e, page 143; Dymow v. Bolton, 11 F.2d 690, 691 (C.A.2d, 1926); Rodriguez v. Western Union Tel. Co., 259 App.Div. 224, 18 N.Y.S.2d 759, affirmed, 285 N.Y. 667, 34 N.E.2d 375; Lueddecke v. Chevrolet Motor Co., 70 F.2d 345, 348, 349 (C.A.8th, 1934).

Finally, if we assume that plaintiff's idea of putting an existing design on cups and plates would, *if novel,* be a protected property right, we are unable to conclude that such idea possessed novelty in the sense that such word is employed in the legal context of protected property rights. We do not think that the novelty essential to a protected property right can arise solely from the fact that something already known and in use is put to a new use however obvious. In Brown v. Piper, 91 U.S. 37, 23 L.Ed. 200, it was held that the idea of freezing fish by a method long employed to preserve other animal substances was not invention, even though no one had theretofore applied such a freezing method to fish. In Masline v. New York, N. H. & H. R. Co., 95 Conn. 702, 112 A. 639 (1921), it was held that because steam railroads had never before sold the space on its station walls, fences, depots, cars, etc., for advertising, a suggestion that it do so did not exhibit such novelty and originality as to entitle the author of the suggestion to claim a property right therein.

We are of the opinion that the evidence established beyond factual dispute that plaintiff's design of cattle brands (identical in appearance to log marks) on a background of wood grain was not novel. We hold, as a matter of law, that an idea of using such known decorative design upon paper cups and plates does not amount to such an original intellec-

tual or ingenious conception as to be entitled to protection as a property right. Defendant's motion for a directed verdict should have been granted.

The judgment of the District Court is reversed with direction to enter judgment of no cause of action for defendant.