**Mary Ann PITTMAN, Plaintiff,**

v.

**AMERICAN GREETING CORPORATION,**
**Defendant.**

**No. C 83–0001–L(B).**

United States District Court,
W.D. Kentucky,
Louisville Division.

March 13, 1985.

Jack Wheat, John Dodson, Louisville, Ky., for plaintiff.

George J. Moscarino, Cleveland, Ohio, Lively Wilson, Louisville, Ky., for defendant.

**MEMORANDUM**

BALLANTINE, District Judge.

This copyright infringement and unjust enrichment action is before the Court on

cross-motions of the parties for summary judgment and on the motion of the plaintiff to hold in abeyance pending a ruling on her motion to compel. For the reasons hereinafter set out, plaintiff's motions will be denied and defendant's motions will be granted.

On December 11, 1984, the Court entered an order granting plaintiff an extension of time to January 11, 1985, to respond to defendant's motion for summary judgment. On January 11, 1985, instead of responding to the pending motion, plaintiff moved to compel answers to certain interrogatories and to hold defendant's motion in abeyance pending ruling on her motion. On February 5, 1985, plaintiff responded to defendant's motion and on March 1, 1985, unencumbered by compliance with the local rules, plaintiff filed a reply to defendant's reply memorandum.

Defendant markets a line of greeting cards and related products consisting of a cast of characters whose names reflect certain desserts or otherwise sugar and fruit-oriented foods. These characters live in a realm known as Strawberryland and are tagged with such names as Strawberry Shortcake, Raspberry Tart, and the character in issue, Angel Cake.[1]

In March, 1981, plaintiff submitted about 40 rough sketches to Carl Goeller, who was the individual charged with responsibility for the editorial copy which appeared on defendant's cards, stationery and the like. Goeller had no responsibility for the development of characters depicted on defendant's products.

The development of the characters on defendant's products was the responsibility of a group called Those Characters From Cleveland (TCFC).

Upon receipt and examination of plaintiff's submissions, Goeller concluded that they were not suitable for defendant's purposes and returned them to plaintiff. The sketches were not shown to any of the TCFC personnel before they were returned to plaintiff.[2]

At plaintiff's deposition it was stipulated that the only character which plaintiff contended was infringed was her character called Little Angel Food Cake.

The affidavits accompanying defendant's motion establish that in February, 1981, TCFC prepared a list of proposed new characters for Strawberryland, including Angel Cake. That list was submitted to defendant's legal department for trademark clearance. After submission to an outside firm for a trademark search, TCFC was notified that Angel Cake had been cleared for use except on food products.

In February, 1981, TCFC's creative consultant, Muriel Fahrion, was assigned to prepare drawings of Angel Cake.[3] As drawn by Fahrion, Angel Cake was depicted as having lavender hair tied about with a gold hair ribbon. She was depicted in a light blue or green smock-like garment worn over a white blouse, the sleeves of which are bunched and, arguably at least, may be said to resemble wings. Beneath the smock Angel Cake's bloomers extend to about her knees. She wears green and white striped stockings and lavender shoes.[4]

Plaintiff's creation, Little Angel Food Cake, is depicted with a halo unattached to her head, and readily identifiable wings. She is clad in a garment resembling a toga and footwear described by plaintiff as Roman sandals which appear to be laced up to about the knees.

We turn to the issues presented by defendant's motion.

## I.

The United States Court of Appeals for the Sixth Circuit has recently addressed

---

1. Angel Cake is sometimes accompanied by a lavender skunk named Soufflé.

2. A letter from Goeller to plaintiff is discussed below.

3. Originally, Angel Cake was to be accompanied by a cat named Divinity. The cat was abandoned in favor of the olent Soufflé.

4. A second depiction of Angel Cake shows her playing a harp under the adoring gaze of Soufflé.

similar issues in *Wickham v. Knoxville Intern. Energy Exposition*, 739 F.2d 1094 (6th Cir.1984). In that case the court was confronted with a claim that defendants, promoters of an exposition in Knoxville, had utilized copyrighted drawings of a tower prepared by plaintiff. In affirming a summary judgment for defendant, the court wrote:

"This Court recognizes that granting summary judgment, particularly in favor of a defendant, is a practice to be used sparingly in copyright infringement cases. *See Arnstein v. Porter*, 154 F.2d 464 (2d Cir.1946). 3 M. Nimmer, *Nimmer on Copyright*, [Section] 12.10 (rev'd 1983). However, a court may compare the two works and render a judgment for the defendant on the ground that as a matter of law a trier of fact would not be permitted to find substantial similarity. (Citations omitted.)

Reduced to most fundamental terms two elements are necessary to plaintiff's case in a copyright infringement action: ownership of the copyright by the plaintiff and copying by the defendant. (Citations omitted.) In order to prove copying by the defendant, the plaintiff must prove access as well as substantial similarity. (Citation omitted.) Thus, copying is an essential element of infringement and substantial similarity between the plaintiff's and defendants' works is an essential element of copying. * * * *

\* \* \* \* \* \*

Similarity is determined by a comparison of plaintiff's and defendants' works. '[A]n appellate court may reverse a lower court's grant of summary judgment to the defendant based upon a finding of lack of substantial similarity if the appellate court, upon a comparison of the two works, concludes that absence of substantial similarity is not so clear as to warrant such a conclusion as a matter of law.' 3 *Nimmer, supra*, at [Section] 12.-12." 739 F.2d at 1097.

Assuming that plaintiff owned a copyright to Little Angel Food Cake, she must establish the second element of infringe-

ment, that is, copying. As the *Wickham* court noted, to establish copying plaintiff must prove access and substantial similarity.

The only evidence of access is found in a letter from Goeller to plaintiff in which he stated:

"Thanks for letting us review these suggestions for additional characters for our line.

We've reviewed them with our Marketing and Licensing people and they don't feel any of these characters are strong enough to add to our 'stable'.

Thanks for thinking of us ... and good luck with them elsewhere."

In his affidavit appended to defendant's motion for summary judgment and in his deposition Goeller denies ever showing the sketch to anyone at TCFC:

"Q   What did you do with Ms. Pittman's ideas after you received them?

A   After I received, I looked at them, decided they weren't for us, and returned them.

Q   Did you have your marketing and licensing people review her ideas?

A   No, I did not.

Q   Have you ever stated differently?

A   Yes, in my rejection letter I said that we had reviewed those with our marketing and licensing people.

\*     \*     \*     \*     \*     \*

Q   Was your statement in Plaintiff's Exhibit 8 untrue?

A   It was untrue, yes, from the standpoint that I did not show them to any people in marketing or licensing." (Goeller Deposition, p. 13.)

"15.   I recall that, when I looked at Mrs. Pittman's submission in 1981, I immediately observed that the artwork lacked professional quality and that the written material did not appear to contain any new ideas. As a result, I did not look at most of her character suggestions but only glanced at a small number of them.

16.   At no time did I show or send Mrs. Pittman's submission to or discuss

it or any part of it with any person connected with TCFC. Mrs. Pittman's submission did not leave my department until I returned it to her by mail.

17. Pursuant to company policy, I made no copies of Mrs. Pittman's submission. On or about March 11, 1981, I returned to her by mail all of the items she had submitted.

18. Pursuant to my practice, I sent Mrs. Pittman a note when I returned her submission. The note was dated March 11, 1981 and signed by me. A copy of the note is attached hereto as Exhibit C2. While the note stated, 'We have reviewed them [her submission] with our Marketing and Licensing People and they don't feel any of these characters are strong enough to add to our stable,' that statement was not strictly true because I do not recall reviewing the submission with any one else. Rather, I had concluded, based on my familiarity with American Greetings' products and marketing and licensing activities, my 13 years with American Greetings, and my 28 years of professional experience in the greeting card industry, that Mrs. Pittman's submissions were of no interest to the company." (Goeller Affidavit, paragraphs 15 through 18.)

■ Recognizing that on a motion for summary judgment all disputes of fact must be viewed in the light most favorable to the non-moving party, and assuming for the moment that Goeller's letter creates a material issue as to access, plaintiff nevertheless simply cannot establish substantial similarity between her sketch and Fahrion's sketch. While the Court's attempted description of the sketches may lack clarity, the Court would note that plaintiff's sketch is in the nature of a Renaissance concept of an angel while Fahrion's sketch represents a cloyingly sweet child.

Rather than attempt to find descriptive terms, the Court attaches hereto photocopies of the two sketches. It is obvious to the Court that there is, in the language of Judge Taylor, "a virtual absence of similarity of specific features." *Wickham v.*

*Knoxville Intern. Energy Exposition,* 555 F.Supp. 154, 155 (E.D.Tenn.1983).

The Court concludes that defendant is entitled to summary judgment on Count I of plaintiff's complaint.

## II.

■ Count II of plaintiff's complaint sounds in unjust enrichment and alleges that defendant either solicited or accepted her submission of confidential ideas and that defendant benefitted from its use of those ideas. Plaintiff seeks compensation for defendant's alleged unjust enrichment.

An unjust enrichment claim is based on plaintiff's assertion that defendant has appropriated her idea. In *Official Airlines Sched. Inform. Serv. v. Eastern Air Lines,* 333 F.2d 672 (5th Cir.1964), the court articulated the elements necessary to establish a right to relief: "[T]he essential elements which a plaintiff is required to establish as a prerequisite to a right to relief in a case of this character.... generally are: (1) the idea must be novel; (2) the disclosure of the idea must be made in confidence, and (3) the idea must be adopted and made use of by the defendant."

The Court is convinced that plaintiff cannot satisfy the criteria quoted above. Her main obstacle is the question of novelty. Plaintiff candidly admits that the depiction of angels with wings and halos is an ancient practice (Plaintiff's deposition, p. 93–95).

On March 4 or March 5, 1981, plaintiff sent Goeller a number of black and white sketches of proposed characters to be added to the Strawberryland cast. The impetus for plaintiff's submission was an article in the February 15, 1981 edition of the *Courier-Journal.* Plaintiff took Goeller's name from *The Writer's Market,* a trade journal aimed at the freelance writing market. Goeller, who had no participation in the artistic portion of defendant's operation, nevertheless concluded that plaintiff's drawings were lacking in professional quality and intellectual originality.

It is further established that prior to the time that plaintiff submitted her drawings to Goeller, defendant, acting through TCFC, had begun developing the concept of Angel Cake. In February, 1981, Fahrion had been directed to prepare preliminary drawings of Angel Cake (Fahrion Deposition p. 43–44).

The affidavit of Tom Jacobs, a senior editor of TCFC, establishes that in January and February, 1981, "brainstorming" sessions with a view to expanding the larder of Strawberryland were being held. It was from one of those sessions that Angel Cake emerged, accompanied by the now-discarded cat Divinity.[5]

In *Stevens v. Continental Can Co.*, 308 F.2d 100 (6th Cir.1962), the court addressed the common law concept of a property right in intellectual material:

"In general, it may be said that property rights may exist in copyrighted material (such as literary and musical compositions), architectural designs, mechanical or scientific inventions, advertising slogans, original paintings and works of art. (Citations omitted.) We find no case, however, where anything as simple as combining into a decorative scheme for picnic cups and plates, a wood grain background (already in use and well known) with cattle brands (long in use as a decoration on packages for merchandising) was held to be an original artistic scheme, work of art or a work of such novelty as to vest in its author a common law or statutory copyright or property right. Assuming, however, that such a decorative design creates a property right, it will not be accorded protection against use by others if it is not original with the person asserting the right to such protection or if such design is already in use and within public knowledge. * * * * [I]n order for a recovery to be obtained for such a disclosure, the matter communicated must possess the quality of novelty in the legal sense. So here, the fact that plaintiff announced to defendant's agent that she was disclosing her design to him in confidence would not impose a duty upon defendant to pay her if the design was neither new nor novel. (Citations omitted.) She was a volunteer in talking of her design to defendant's agent who made no promise and did not, for defendant, agree to use her claimed original idea. Her idea or design was already in use and within public knowledge; we will not, nor could a jury, imply an agreement by defendant to pay her for using an allegedly novel design which was not such in fact." 308 F.2d at 103.

It does not require a background in art appreciation to recognize that the fanciful depiction of angels has long been employed by artists. There is simply no novelty attaching to plaintiff's drawings and defendant's motion for summary judgment as to Count II will be granted.

An appropriate order has been entered this 13th day of March, 1985.

---

**5.** The Court will not extend this memorandum to an unreasonable length by reciting the litany of proposed new characters. It is enough to note that if produced they would create a pedodontist's nightmare.

Plaintiff's "Little
Angel Food Cake"

American Greetings'
"Angel Cake" and her
pet, "Soufflé"