CHARLES M. ARTHUR *vs.* THE NORFIELD PARISH CON-GREGATIONAL CHURCH SOCIETY.

Third Judicial District, Bridgeport, April Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A contract of settlement between a Congregational church and its pastor is, unless otherwise therein provided, for the term of his life, unless sooner terminated for cause, or altered by mutual consent.

It would be thus altered by a subsequent vote of the society substituting a shorter term, which was assented to by him.

Such a vote would not be invalid because passed on Sunday.

Action taken by an ecclesiastical society at a meeting not properly

Arthur *v.* Norfield Congregational Church.

warned, may be ratified and confirmed by long and general acquiescence on the part of its members.

Under a provision in the constitution of an ecclesiastical society that business might be transacted at any regular meeting, or at a special meeting, notice of which should be read from the pulpit on the preceding Sabbath, such notice was required of any business to be brought before a regular meeting.

A provision in such a constitution that the pastor shall hold office without limitation of time is not retrospective, and does not vary the terms of a previous settlement.

A contract by which a member of a particular religious denomination is settled over a church of that denomination as its pastor, is necessarily made with reference to the laws and usages of the denomination, and they enter into and form a part of it.

An *ex parte* council of churches, called by certain members of a Congregational church to consider charges which they preferred against its pastor, heard evidence and reached certain conclusions; but before they were announced the church and the aggrieved members united in a letter-missive calling a mutual council for the same purpose. The pastor signed the letter-missive as chairman of the committee of the church, and in that capacity appeared before this council when it met, and was fully heard. It found the charges proved, and advised the pastor to resign forthwith, and withdraw permanently from the Christian ministry. The church, which was also the ecclesiastical society, voted to accept this advice and dispense with the pastor's services thereafter. The trial court having found as a fact that Congregational custom and usage authorized the mutual council to pursue the course it took with respect to the plaintiff, *held* that the defendant by accepting its advice became authorized to sever the pastoral relation, and that it could not be said that any principle of substantial justice was violated in upholding such usage, nor that the plaintiff had been condemned by a tribunal to which he had not expressly subjected himself.

Such a council could exercise its discretion as to how far back to push its inquiries into the career and conduct of the plaintiff respecting the matters charged, and even to investigate his doings before he became a Congregational minister.

The laws and usages of Congregationalism—which was for nearly two centuries the established religion of this State—are a subject-matter of judicial notice, and any error of the trial court in this particular was reviewable on appeal.

It is not inconsistent with any principle of justice applicable to such proceedings, for the mutual council to refer extended documentary evidence to one of its members for examination and report; such course being in accord with Congregational usage.

The dissatisfied members of the church were not disqualified from participating in the vote to accept the council's advice.

In a suit by the removed pastor (who was also a member of the church) for his salary, it was *held* that if he desired to question the impartiality of the mutual council because it was composed in part of churches which had been represented in the *ex parte* council, he should have made his objection during the proceedings before the mutual council.

The contract of settlement provided for an annual donation party. *Held* that the lawful dissolution of the pastoral relation before the end of the second year put an end to the plaintiff's right to a " donation " for that year.

A mutual council can only be called by a church; but the other party signs the letter-missive.

The right to take judicial notice and apply it to the decision of causes is one which appertains to every court of justice, high or low, and in the exercise of appellate no less than of original jurisdiction.

Church councils cannot be expected to conform to all the rules applicable to courts of public justice, and are not governed by the strict rules of legal evidence. It is enough if those whose conduct may be the subject of inquiry before them have a fair and reasonable hearing.

There is no necessary impropriety in the refusal of such a council to allow cross-examination of witnesses.

A member of both councils did not sit in the second until considerable testimony had been given, the nature and effect of which he learned by inquiry of his fellows. This course was found to be in accord with the usages of such councils. *Held* that while it was a mode of procedure which should be practiced, if at all, with caution and reserve, yet it was not such a departure from the fundamental principles which should govern such hearings as to vitiate a result which was unanimously reached.

The letter-missive for a council fulfils the office which a warning does for a meeting of an ecclesiastical society, and a ruling of the council that a certain line of evidence is not within the call, is not to be lightly overruled.

The only substantial difference between an advisory council called by an unconsociated Congregational church and the regular council of a consociation, is that one is convened for the occasion by parties who name the constituent members, and the other is a standing body.

Statements in the draft finding which are marked " proven " will be given the same force and effect as if incorporated in the finding of the court; hence a motion to correct the finding by adding these matters is unnecessary and will be overruled.

　　Submitted on briefs April 19th—decided May 29th, 1901.

ACTION for damages by a Congregational minister on a

Arthur v. Norfield Congregational Church.

contract for his settlement as pastor, brought to the Court of Common Pleas in Fairfield County and tried to the court, *Curtis, J.* ; facts found and judgment rendered for the plaintiff for $51 on the first count, and for the defendant on the second, and appeal by the plaintiff for alleged errors in the rulings and findings of the court. *No error.*

The facts are sufficiently stated in the opinion.

*John J. Walsh*, for the appellant (plaintiff).*

*Louis K. Gould* and *Robert H. Gould*, for the appellee (defendant).

BALDWIN, J. In 1895 the Norfield Congregational Church in Weston became a corporation, pursuant to the Public Acts of 1893, Chap. 44, and was thus invested as such with all the rights and subjected to all the duties of an ecclesiastical society. Shortly afterwards it extended a call to the plaintiff to become its pastor, which he accepted. The terms of settlement were expressed in a writing signed by both parties. The plaintiff was to be paid $46 a month from June 1st, 1896, together with the use of the parsonage so long as he should continue to be pastor, and a "donation" was also to be made "sometime during the year," which was to be "considered as an addition to the salary." "In the event of uneasiness on the part of the congregation," he was to "give up the desk" three months after a notice of such uneasiness had been "duly given."

The plaintiff entered upon his duties and became a member of the church. Pursuant to Public Acts of 1893, Chap.

---

* On inspecting the briefs submitted, the Court made the following order:

"ORDER REFUSING TO RECEIVE APPELLANT'S BRIEF.

"A brief in behalf of the appellant having been handed in, in the above-entitled cause, which contains scandalous and scurrilous references to matters not pertinent to the consideration of the cause, it is hereby ·

"ORDERED, that the briefs be returned by the clerk to the counsel who filed them, as unfit to be filed in the cause; and it is further

"ORDERED, that counsel for the appellant be allowed to file a proper brief, on or before April 27th, 1901, and that the appellee be allowed to file a reply brief thereto, if it desires, within one week thereafter."

A proper brief was thereafter filed.

43, the defendant then adopted a constitution for its government. Among its provisions were these : Under the head of *Officers :* " The pastor shall hold his office without limitation of time. In the settlement of a pastor the church shall act by an ecclesiastical council called in the usual manner, and such council shall be mutually called by the pastor and the church to act on the question of his dismission, whenever the pastor shall desire it, or the church shall so vote in a meeting notified on the preceding Sabbath for that specified purpose." Under the head of *Discipline :* "In cases of difficulty the advice and aid of a council may be sought; " and under the head of *Meetings :* " Business may be transacted at any regular meeting of the church, or at a special meeting called by a majority of the regular officers of the church, or by the written request of five adult members ; notices of which shall be read from the pulpit on the preceding Sabbath. Regular meetings may also be appointed by the church. Beside the regular public services of the Sabbath, the church shall hold a weekly meeting for prayer and conference ; and special religious meetings shall be held at such times as the pastor or the church shall designate."

On January 1st, 1898, several members of the church presented a written complaint to it, charging the plaintiff with misrepresentation, tyranny, immorality, intimidating members of the church from voting at church meetings, and general unfitness to serve as pastor of a Congregational church ; stating that they had been by his action deprived of the rights belonging to them as members ; and asking it to unite in calling a mutual council " to investigate the past record of the said Mr. C. M. Arthur, and all his relations with this church since he came as pastor, and to advise as to what ought to be done." The church having taken this request into consideration, voted to " decline to ask advice of a mutual council until it has itself investigated the allegations and determined the facts, or finds itself in doubt as to its duty, and the difficulties surmount the wisdom of this church." Thereupon, some of those who had joined in the complaint issued a call for an *ex parte* council of Congregational churches to con-

sider the matters so complained of "and any others belonging essentially thereto, and to advise as to what ought to be done in the premises." Such a council, consisting of twelve churches and one Congregational clergyman not settled over any parish, was accordingly convened at Weston on January 18th, 1898.

Meanwhile, the church had voted, during the regular public services on Sunday, January 9th, "that the pastor, the Rev. C. M. Arthur, be employed one year from April 1st, 1898," and on January 18th he notified the church that he accepted this invitation.

The following proceedings of the council appeared upon its minutes: Having made ineffectual efforts to obtain the consent of the church to make it a mutual one, it took evidence and came to certain conclusions. A committee was appointed to formulate them, and an adjournment taken to January 24th. On that day it was again adjourned, the plaintiff and other members of the defendant church having appeared before it and stated that the church was now willing to unite in a mutual council. A form of letter-missive for that purpose was drawn up, and on January 26th the church resolved "that the church and pastor unite with the aggrieved party and call a mutual council as per letter-missive read." The paper was signed on the next day, and read as follows : —

"The Congregational Church in Weston to the Congregational Church in          sendeth Greeting :
"DEAR BRETHREN : —
"Differences and disagreements having arisen within this church, some of which are connected with charges on the part of certain members of the church that the pastor is unworthy to hold that office, and that the affairs of the church have not been and are not being conducted in accordance with approved Congregational usage, which difficulties and disagreements disturb our peace and harmony, and for the adjustment of which we desire your Christian counsel. This is to request your presence by your pastor and delegate at

our church in Weston, on the 8th day of Feb., 1898, at 10 : 30 in the forenoon, to advise us on the following points : —

"1. Has the conduct of the Rev. C. M. Arthur prior to and during his present pastorate been such as to indicate that he is worthy to act as the pastor of a Congregational church; and should his name stand in the list of Congregational ministers in good and regular standing.

"2. Have our affairs as conducted under his pastorate been conducted in accordance with approved Congregational usage.

"3. Are those who called the recent *ex parte* council and their associates unreasonably disturbing the church.

"4. Have they and their associates just grounds for complaint or any standing to make it.

"Wishing you grace, mercy and peace.

      "Signed,

"C. M. ARTHUR,
"EBENEZER FITCH,       } "Committee for the Church.
"VANDERBILT GODFREY,

"D. L. COOLEY, JR.,
"EDWARD H. FERGUSON,  } "Committee for the aggrieved."
"J. S. LANE,

                  "WESTON, Jan. 27th, 1898.

"The following churches called in Council : —

"Bridgeport 1st, Stamford, New Canaan, Round Hill, Georgetown, Greenfield Hill, Darien, Norwalk 1st, Greens Farms, Sound Beach Pilgrim, Ridgefield, Black Rock, Danbury 1st, Bridgeport 2d, Brookfield Center, Wilton, Westport, Southport, South Norwalk, Redding, Greenwich 1st, Bridgeport West End, Bethel, Fairfield."

Of these twenty-four churches, twelve had been included in the *ex parte* council.

The following proceedings, among others, of the mutual council appeared upon its minutes : —

"Rev. C. M. Arthur having expressed the desire to be

represented by his legal adviser, Curtis Thompson, Esq., the council adopted the following resolution : —

" While this council is not in favor of the admission of attorneys, as such, into Congregational councils, yet in view of the exigencies of the present case, be it

" Resolved, That the services of Curtis Thompson, Esq., be admitted to this case for the present. . . .

" Curtis Thompson, Esq., presented the case of the church. . . .

" Mr Arthur and the counsel of the church declared that they had presented all the evidence which they desired to present."

At an adjourned session on February 14th, 1898, " a request of Mr. Arthur, that he be allowed to present evidence received by him since the preceding session, was entertained, and it was voted that both Mr. Arthur and the committee for the aggrieved be admitted to present such evidence as fully as they might choose. Mr. Arthur presented two items of such evidence. Mr. Lane, for the aggrieved, waived further hearing."

On February 15th, 1898, a final " result" was unanimously reached, sustaining the charges made in the original complaint, finding the plaintiff manifestly disqualified for the Christian ministry, and advising him to withdraw from it permanently, and to resign his pastorate immediately, in which latter event the church was advised to make such financial arrangements with him as should be just and equitable.

On March 1st, 1898, the *ex parte* council, at an adjourned meeting, adopted a similar result, embodying the conclusions reached by it on January 18th. Upon the same day the defendant voted to accept the advice of the mutual council, to dispense with the services of the plaintiff from that date, and to pay him a sum equivalent to his salary to June 1st, if he would accept it in full settlement and agree to vacate the parsonage by the latter date.

The plaintiff was not thereafter permitted to act as pastor, but he offered his services and stood ready to render them

until April 1st, 1899, and could obtain no employment elsewhere during that period. This suit was brought early in April, 1898. In a first count he asks for his salary to April 1st, 1898, and for damages for not giving a promised donation party. In a second count he alleges an employment on January 18th, 1898, to act as pastor from April 1st, 1898, and a refusal to allow him so to act.

The original contract between the parties constituted a settlement for the term of the plaintiff's life, subject to the provision for terminating the pastoral relation on three months' notice, and also to any right which the church might have to terminate it for cause, in conformity to the rules and usages of the Congregational denomination of Christians. *Whitney* v. *Brooklyn*, 5 Conn. 405, 414; *Gibbs* v. *Gilead Eccl. Society*, 38 id. 153, 166. The vote of the church on Sunday, January 9th, 1898, proffered another arrangement as respects his term of service, namely, that he be employed for one year from April 1st, 1898. This he accepted, and now makes the basis of his second count.

The vote was not objectionable because passed on Sunday. An ecclesiastical corporation can properly transact such business on that day. Nor was it invalid because taken at and during the regular church services. The defendant was both a church and a corporation for the support of a church. It could, if it saw fit, while assembled for religious worship, interrupt the ordinary course of its services to dispose of such a matter as the employment of a pastor.

No previous notice, however, that the action now in question was contemplated, had been given, except an oral one from a single member at the Wednesday evening prayer-meeting of the church, held during the preceding week. This notice was insufficient. In its capacity as an ecclesiastical society, the defendant could take no action except at a meeting warned by a written notice from the society's committee, posted or advertised five days previously. General Statutes, § 2057. It had no custom of ten years' standing by which this could be dispensed with, for it had only been incorporated for three years. Nor had it any by-law to the

contrary. The provision in its constitution as to the trans-
action of business at any regular meeting was controlled by
the concluding clause of the sentence, which requires notices
of all business to be brought forward, whether at a regular or
special meeting, to be read from the pulpit on the preced-
ing Sabbath.

But the church has never questioned the validity of this
vote, and the plaintiff not only accepted it, but now sues
upon the contract for which it provided. The defect of no-
tice thus becomes immaterial, and his settlement must be re-
garded as one terminating by agreement on April 1st, 1899.

The provision in the defendant's constitution, that " the
pastor shall hold his office without limitation of time," is to
be construed as prospective. It did not therefore prolong
the original contract with the plaintiff, and his pleadings
estop him from claiming that it invalidated the second.

The doings of the mutual council are pleaded in defense
to this action, and the main question is whether its result,
when accepted by the church, became conclusive upon the
plaintiff.

Both as a member of the defendant church, and as its set-
tled pastor, he was bound to conform in his relations to it
to the rules and usages of Congregational polity. As the
public laws subsisting at the time and place of the making
of a contract and in force where it is to be performed enter
into and form a part of it, so the ecclesiastical laws and
usages of a particular religious denomination enter into and
form part of every contract under which the status of the
pastor of a church of that denomination is created.

It is found by the trial court that the mutual council was
duly called together and properly conducted, and that by
Congregational usage the defendant church, by accepting its
advice, became authorized to sever, by action duly taken, all
contractual relations with its pastor. Whether such was the
usage of the denomination was one of the material facts in
issue.

The votes of the church upon March 1st, 1898, were passed
at a meeting which was not proved to have been duly warned.

The burden of making such proof was upon the defendant, and this action, therefore, standing alone, was insufficient to terminate the pastoral relation. It was, however, immediately followed by full notice to the plaintiff of the votes passed, and his exclusion from the pulpit and from otherwise performing any pastoral function. The continuance of this exclusion uninterruptedly, up to the time when he brought suit, and the answer, in which the votes of March 1st are set up as its justification, constitute a sufficient ratification of that action by the defendant corporation. *Rocky Hill* v. *Hollister*, 59 Conn. 434, 447. It is not the case of an unauthorized notice from a mere volunteer. There was not a total absence of authority, but an irregularity of procedure.

Such a defect might be waived by general acquiescence and the notice given on March 2d thus made good as of that date, against the defendant. *Hall* v. *Norwalk Fire Ins. Co.*, 57 Conn. 105, 112. The finding sufficiently shows such acquiescence, both in the votes passed, and in the actual exclusion of the plaintiff subsequently from the pastoral office.

The plaintiff, at the mutual council, made the objection that under Congregational custom and usage it had no authority to take such course respecting him personally as it did take, and now insists that to give effect to its result as ground for his summary dismissal is to hold him bound by a judgment to which he was neither party nor privy.

The trial court has found that Congregational usage did warrant the action in question. His exception taken before the council was therefore properly overruled.

Nor can he be said to have been condemned unheard. The vote of the church on January 26th, upon which the whole proceeding was based, was " that the church and pastor unite with the aggrieved party and call a mutual council as per letter-missive read." This letter-missive was in the name of the church alone; and it could not properly have been otherwise drawn. A mutual council can only be called by a church. The other party, however, signs the letter-missive. Dexter, Congregationalism, What It Is, 200, 214. In the present instance, the other party was composed of

the aggrieved members of the church. The subject for consideration was described as differences within the church, some of which were connected with charges which they had preferred, one of them being that the pastor was unworthy to hold such an office. The advice asked was, first, as to his acts and character, and, second, as to the propriety of the action taken by the aggrieved members. When, under these circumstances, the plaintiff signed the letter-missive as one of the committee for the church, appeared before the council and took an active part in the hearing, we think no principle of substantial justice is violated by upholding the usage of the religious denomination to which he belongs, according to which he became bound by the result, when that church accepted it, as ground for his deposition. Dexter, Congregationalism, What It Is, 202; *Hollis Street Meeting-House* v. *Pierpont*, 7 Met. 495.

The plaintiff's demurrer to the special defense was also properly overruled. This defense set up the result of the mutual council, and the action of the church taken upon it; alleging that the council was convened at the express request of the plaintiff and the defendant and others, to inquire into his ministerial standing and his character and conduct; that it had full jurisdiction under the ecclesiastical laws and usages of the Congregational denomination, to act upon the matter thus submitted to it; and that all parties before it were fully heard. It thus plainly appeared that he was condemned by an authority to which he had expressly subjected himself. *Kellogg* v. *Brown*, 32 Conn. 108, and note. The acceptance of that judgment by the defendant in effect stripped the plaintiff of any ministerial standing, and justified it in immediately terminating the pastoral relation which he had previously held.

That the plaintiff did not accept the result of the council is immaterial. The Court of Common Pleas has found that by Congregational usage its acceptance by the defendant church was sufficient to make it conclusive upon him, as respects its supporting the action taken for his dismissal.

In the hearing before the mutual council, the minutes were

produced of a previous mutual council held in Michigan in 1893. This was called by the Olivet Association of Congregational Churches in that State and the plaintiff as a member of such Association, to consider charges which it had preferred against him, and of most of which it had adjudged him guilty. By its result this council advised the Association to reverse its judgment. One of the charges was that his wife had obtained a divorce from him in 1887 for cruelty, and that at the trial of her petition his veracity had been impeached. This was pronounced by the result to be too remote in time to justify an investigation.

The Weston Council, against the objection of the defendant church, made through its committee, of whom the defendant was one, carried its investigation back to 1887, so as to include the divorce proceedings ; and made the divorce one of the grounds of objection to his ministerial character stated in its result.

The Michigan Council was not called by the same parties, nor for the same purposes as the Weston Council. The letter-missive for the latter invited an inquiry into matters occurring prior to the plaintiff's settlement over the defendant church, without naming any limitation of time. There is no statutory limitation applicable to such proceedings. The Weston Council could exercise its discretion as to how far back to push its inquiries, and was not precluded by the action of the Michigan Council from examining into matters which the latter, whether because acting under a different letter-missive, or in the exercise of a like discretion, had declined to consider.

Nor was it material that the divorce proceedings occurred when the plaintiff was connected with the Methodist denomination.

The character which he bore, and, the offenses, if any, ·which he had committed before he was ordained into the Congregational ministry, were important factors in determining his fitness to be or remain pastor of any Christian church.

It is made a reason of appeal that the trial court erred in holding that the conduct and the result of the mutual council

were in accordance with Congregational usage under the letter-missive.

What that usage is was a question of fact, as to which the Court of Common Pleas heard expert testimony and consulted standard works of authority upon the customs and ecclesiastical law which govern this religious denomination.

The object and justification of any such resort to printed books is the aid which they may be expected to afford to the court in its exercise of the faculty of judicial notice. Congregationalism was for nearly two centuries the established religion of Connecticut, and its laws and usages form part of the history of the commonwealth. If these laws and usages, as judicially known, differ from those found by the trial court, its error in this respect could be reviewed. *State* v. *Main,* 69 Conn. 123, 136. To take judicial notice is a function, and to apply it to the decision of causes a right, which appertains to every court of justice, from the lowest to the highest, and in the exercise of appellate no less than of original jurisdiction. *Hygeia Distilled Water Co.* v. *Hygeia Ice Co.,* 70 Conn. 516, 535; 72 id. 646, 655. No such conflict as the appellant claims, however, is disclosed by anything within our knowledge, nor by an examination of the standard works on Congregational history and polity to which we have been referred by the counsel for either party.

The mutual council referred certain documentary evidence of considerable extent, produced by the defendant, to a committee of one of their number, to "report as to what it was." He made such an examination and report, and this evidence was not otherwise examined by the council.

The Court of Common Pleas has found that the action taken in each of these particulars was in accord with the usages of Congregationalism. It was not inconsistent with any principle of justice applicable to such a proceeding; and these reasons of appeal are insufficient.

The church meeting of March 1st, 1898, was composed of twenty-three persons, all but two of whom were among the "aggrieved members" of the church, at whose request the mutual council had been called. These twenty-one members

were no more disqualified from participating in the vote to accept the advice of the council than they would have been had the result been adverse to their contention.

The appellant claims that the mutual council was not an impartial body, because twelve of the churches represented had been and still were parties to the *ex parte* council, which had practically completed its investigations and decided as to its conclusions before the mutual council was called. No such objection was made by him or by the defendant during the mutual council, although the letter-missive fully disclosed the composition of that body, and shows on its face an attempt to obviate any ground of exception that might otherwise exist, by adding twelve new churches to those invited to the *ex parte* council. Under these circumstances, this point was made too late.

The pastor of one of the churches invited to both councils, after sitting in the first, appeared also in the second, but not until the hearing was considerably advanced. He then " satisfied himself by inquiring of members as to the effect of the evidence already offered and whether it broke the force of the evidence given at the *ex parte* council, and thereupon he participated in the secret sessions of the mutual council, both speaking and voting." This, it is found by the Court of Common Pleas, was in accordance with the usages of Congregational councils ; and it is not such a departure from the fundamental principles which should govern such hearings as to vitiate a result which was unanimously reached. Bodies of this character cannot be expected to conform to all the rules applicable to courts of public justice. They are assembled for a single occasion ; their membership is large ; and no magistrate is present to lay down the law. They are not governed by the strict rules of legal evidence. *Chapman* v. *Gillett*, 2 Conn. 40, 48, 55, 65 ; Buck, Massachusetts Ecclesiastical Law, 227. It is enough if those whose conduct may be the subject of inquiry before them have a fair and reasonable hearing. For this it is not indispensable that every member of the council should have been present while all the evidence was produced. Dexter, Congregationalism of

the Last Three Hundred Years, 535.   Hearsay is admitted in most countries as judicial proof, and our own courts receive it under certain circumstances.   For one member of an ecclesiastical tribunal to inquire of others as to what testimony has been given in his absence, and to act upon the information, is simply one way of giving effect to hearsay; and while a mode of proceeding that should be practiced, if at all, with caution and reserve, there is nothing to show that such caution and reserve were not exercised in the present instance.

Nor was there any necessary impropriety in the refusal of the council to allow any cross-examination of witnesses. The rule was applied alike to those for each party, and the Court of Common Pleas had found that the trial was fairly conducted, according to the usages of the denomination.

The council refused to consider evidence offered by the committee of the defendant, that the real cause of the trouble in the church was certain conduct of one of the members now claiming to be aggrieved by its action.   It was, to say the least, not clear that a sufficient foundation was afforded by the letter-missive for entering into such an investigation. As to this it was for the council to decide.   Its determination should not be lightly overruled, and must stand as conclusive under the finding of the trial court that the hearing was properly conducted.   The letter-missive for a council fulfils the office of the warning for a meeting of an ecclesiastical society.   No business should be transacted under it, of which reasonable notice is not disclosed upon its face. Dexter, Congregationalism of the Last Three Hundred Years, 529.

The plaintiff claims that the result cannot affect his ministerial standing, because the defendant is not a consociated church.   It is, however, a Congregational church, and Congregationalism is not independency.   The system of advisory councils is an integral and vital part of its polity, and in the present instance also is expressly recognized in the constitution of the defendant.   The only substantial differences between an advisory council called by an unconsociated church and the regular council of a consociation is, that one is con-

vened for the occasion by parties who name the constituent members, and the other is a standing body. This variation in the mode of their composition does not affect the weight of their results. Congregational Order, Middletown, 1843, Digest, Part II. Each is a tribunal without appeal.

Exception is taken to the refusal of the trial court to include in the judgment rendered any allowance for the value of a donation party. It is found that the plaintiff was assured, when employed, that the donation stipulated for would be worth at least $50 a year, but that only one such donation was ever received, this being made during his first year of service.

As the vote of January 9th, 1898, which changed the period of his employment, was silent as to his compensation, that remained the same. He was therefore entitled to receive a donation during his second year of service, ending May 31st, 1898, provided the pastoral relation between him and the defendant remained in force so long. As has been stated, it ceased to be in force after March 2d, 1898, when the defendant received notice of the action of the church taken March 1st, 1898. The defendant had the right to postpone its donation until the end of the second year Before its end the contract of employment was lawfully terminated. With it fell any right of the plaintiff to demand the deferred donation.

The termination of his term of employment by the action of the defendant took effect prior to the beginning of the year specified in its vote of January 9th, 1898. That year, however, was to be a mere continuation of service under the original contract of settlement, which still stood good, except so far as modified in respect to its duration by the vote in question. Hence his rightful dismissal was a sufficient answer to the second count of the complaint.

The statements in the plaintiff's request for a finding, marked "proven" by the trial court, have the same effect in setting forth the facts on which the appeal is predicated as if they had been incorporated in the finding made. The claim

for a correction of the finding, by adding these matters, was therefore unnecessary, and is overruled.

There is no error.

In this opinion the other judges concurred.