STATE OF CONNECTICUT *v.* JOHN R. NAUMEC, JR.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. MV 11-6730

Argued September 14, 1964—decided March 11, 1966 [1]

*Charles S. Tarpinian,* of Willimantic, for the appellant (defendant).

*Philip M. Dwyer,* prosecuting attorney, for the appellee (state).

DEARINGTON, J. The defendant was convicted of speeding in violation of § 14-219 of the General Statutes and appealed, assigning error in certain rulings on evidence, the qualification of witnesses, in the court's taking judicial notice of the accuracy of radar as a device for measuring the speed of

---

[1] This case was argued September 14, 1964. At that time, it was stipulated by counsel for the defendant and the prosecutor that the decision of this court in this case might be withheld until the case of *State* v. *Tomanelli,* 153 Conn. 365 (1966), had been determined by the state Supreme Court. At the time the instant case was argued before this court, counsel for the defendant in this case was in the process of petitioning the Supreme Court for certification of the *Tomanelli* case. The issues raised in *Tomanelli* are for the most part the identical issues raised in the instant case, and a more comprehensive treatment of evidence relating to police radar is set forth in Justice Alcorn's opinion in *Tomanelli.*

moving objects, and in that upon all the evidence the court found the defendant guilty of the crime charged beyond a reasonable doubt. The defendant did not testify or offer any evidence in his own behalf.

On February 28, 1964, at about 3:10 p.m., the defendant was arrested for speeding on route 195 in the town of Mansfield. A radar unit operated by a state police trooper had recorded the defendant's speed at seventy-four miles per hour on the visual indicator and seventy-three miles per hour on the graph indicator. As a result of such recordings, the trooper communicated with a trooper in a chase car and the defendant was stopped. The radar device was tested both before and after its use by three tuning forks equivalent to speeds of forty, sixty and eighty miles per hour respectively. Each tuning fork when activated and held before the transmitter-receiver registered both on the graphic and the visual indicator the respective speed equivalent of each fork, that is, forty, sixty and eighty miles per hour. Route 195 is not a multiple lane, limited access highway. When stopped, the defendant stated he was in a hurry to get to the Willimantic police station to make out an accident report. The court concluded that the trooper operating the radar device was qualified to operate such a device, that the device had been tested before and after the recording, that such a device was an accurate recorder of speed, that the defendant was operating his vehicle at a speed of seventy-three miles per hour, that such a speed was in excess of the maximum speed permitted by law, and that the defendant was guilty as charged.

The basic questions raised by the defendant's assignment of errors are focused on the qualifications of the operator of the radar device, the test-

ing of the device, and whether the court could, upon the facts presented, take judicial notice that such a device could accurately measure the speed ·of a moving motor vehicle. The defendant also assigns error in the court's admitting into evidence only the portions of the graphic record which related to the defendant's speed and to the results of the tuning fork tests, and in the court's conclusion that upon all the evidence the defendant was guilty as charged beyond a reasonable doubt.

In *State* v. *Tomanelli,* 153 Conn. 365, 370, the Supreme Court held that "[t]he scientific accuracy of the Doppler-shift principle for the measurement of speed, if the principle is correctly applied, is, in the discretion of the court, a proper subject of judicial notice so that, especially where, as here, no evidence attacking it was proffered, expert testimony in explanation of the principle is not a necessary prelude to the introduction of radar evidence. . . . Whether the instrument itself is accurate and is accurately operated must necessarily be demonstrated to the satisfaction of the trier in order to render the evidence produced by it admissible." As in *Tomanelli,* there was evidence in the instant case that the operator had tested the accuracy of the instrument with three tuning forks both before and after the defendant's speed was recorded. This test consisted briefly of activating what were described as forty-, sixty- and eighty-mile-per-hour tuning forks by striking each on a solid object—here, the heel of a shoe. Each fork was then held in front of the beam indicator of the machine, and both the visual and the graphic recorder indicated corresponding readings of forty, sixty and eighty miles per hour. The operation of police radar requires no technical knowledge of radar science. *State* v. *Tomanelli,* supra, 371. The operator of the machine had been performing on the radar detail for

four months and had previously received instructions in radar operation at the state police traffic division. No attack is made here on the accuracy of the tuning forks. There was evidence that they came with the machine and had been calibrated two months prior to the day in question. Upon these facts, the court did not err in concluding that the machine had been properly tested and was functioning correctly, and that the principles involved had been accurately applied. It was then within the court's discretion to take judicial notice of the machine's reliability in recording the speed of a moving motor vehicle. Much of the evidence as it related to the testing of the machine and the qualifications of the operator came in over the defendant's several objections. For reasons heretofore considered, the court did not err in overruling the objections.

The defendant also claims error in admitting into evidence only the portion of the graphic record containing the alleged speed of the defendant and the portions containing the recordings of the tests made in conjunction with the tuning forks. These assignments will be considered together since they involve the same question. The defendant's speed appeared on two recorders simultaneously. These recorders, both visual and graphic, were connected to the radar machine. The visual recorder operates somewhat like a speedometer, while the graphic recorder indicates the speed by a moving pen-like attachment which traces a line on a roll of paper, making a permanent record of speed. The paper moves on rollers, the pen moving up the paper from zero to the recorded speed. The paper is calibrated from 0 to 150 by horizontal lines for readings of a rate of speed-increase of two miles per hour commencing at 0 and continuing to 150. The graphic-recording process operates continuously throughout

the entire period the machine is in operation, in this case about three hours. The defendant claims that the entire roll of paper should have been introduced and that without it the several individual recordings were inadmissible. He claimed that the best evidence that the machine was functioning properly could be determined only from an examination of the entire graphic record. Such a claim was made in *State* v. *Tomanelli,* supra, 373, and the court held: "[T]he objection was not well taken since the offer was objected to, not because the proffered exhibit was claimed to be inadmissible for corroboration purposes, but because the defendant wished to have the whole roll in evidence in order to show 'what the operation of this radar unit was during the time that it was in operation [sic].'" Nor does such graphic recording lend itself to an application of the best evidence rule. "The rule applies when the terms of a writing need to be proved. . . . The graph was merely a recording of the . . . [visual meter reading which the operator had independently observed and which was the basis for his communicating with the 'chase' trooper]." Id., 374. The trial court did not err in ruling that the individual graphic records were admissible without producing the graphic record covering the entire period of operation.

Finally, the defendant assigns error in the court's conclusion that he was guilty as charged beyond a reasonable doubt. An examination of the transcript satisfies us that the court did not err in this respect.

There is no error.

In this opinion JACOBS and KINMONTH, Js., concurred.