The defendant was convicted by the trial court of traveling unreasonably fast in violation of *Page 314 
General Statutes 14-218a.[1] From this judgment the defendant has appealed. The defendant has raised the following issues: (1) the court erred in reference to his motions for discovery; (2) the court erred in its interpretation of the law concerning the use of radar to support a conviction of speeding; and (3) the prosecutor misused his office by depriving the defendant of his legal and constitutional rights to obtain exculpatory material.[2]
The trial court found the following facts: On March 17, 1981, at approximately 5 p.m. the defendant was operating his 1979 Oldsmobile in an easterly direction on Route 2, a limited access public highway in the town of Marlborough. He was stopped by a state trooper and charged with speeding in violation of 14-219. His speed had been clocked by radar at seventy-two miles per hour in a posted fifty-five miles per hour zone. Traffic was heavy at the time and the weather was clear.
On April 16, 1981, the defendant pleaded not guilty to a substitute information charging him with traveling unreasonably fast in violation of14-218a. On May 15, 1981, the defendant, who represented himself throughout the proceedings, filed a motion for discovery. After a hearing, the trial court ordered the state to supply the defendant with the make, model and date of manufacturer of the radar unit but denied the rest of the motion. Additional motions for discovery requesting the same information were subsequently filed and denied. Trial commenced on July 24, 1981. *Page 315 
The arresting officer had experience and training operating the radar equipment. The unit was calibrated by tuning forks forty-five minutes before the defendant was stopped and it was found to be accurate. It was tested by the same tuning forks two hours after the defendant was stopped and it was found to be accurate. Three weeks after the incident, both the tuning forks and the radar unit were successfully tested for accuracy.
 I
The defendant first claims that the court erred in failing to grant his entire motion for discovery.[3] We do not agree.
The defendant asserts that the items requested in his motion were discoverable as a right under 741[4] and, therefore, that the court erred in granting only a portion *Page 316 
of the motion. After reviewing the transcript of the trial,[5] we conclude that the defendant was not entitled to the items requested and find no error in the denial.
Paragraph one of the motion sought the identification records of the vehicle and radar equipment, the manufacturer, age, model number and maintenance and calibration record of the radar device. The court ordered the state to disclose the manufacturer, age and *Page 317 
model number but denied the remainder of the request. Nothing in the transcript indicates that the lack of that information hampered the defendant in preparing his defense. The supervisor of the state police radio division appeared as a defense witness and brought those records to court. He was questioned extensively with respect to the maintenance and operation of the particular device and there was no evidence that the equipment was improperly maintained or calibrated.
The second paragraph sought the radar manufacturer's operational and set-up manuals. The court stated that once the defendant knew the manufacturer and model number of the radar device, he could obtain the requested manuals from the manufacturer since the state was not required to prepare the defendant's case. We find no error in this ruling.
Paragraph three sought the radar training record of the arresting officer. The officer testified at trial that no such records are kept. In order to obtain disclosure, the information sought must be in the possession of a state agency. Practice Book 741.
The fourth paragraph requested a description of the location of the officer's vehicle and orientation of the radar device and an explanation of how the officer identified the defendant's vehicle. As the court noted at the hearing on the motion, those are matters which are properly the subject of cross-examination of the officer at trial and are not subject to pretrial motions for discovery. Practice Book 746(1).[6] Finally, the motion *Page 318 
sought the arresting officer's summons record for the date on which the defendant was arrested and for any other day on which the officer was assigned to the same location. We find no error in the court's denial of this request since this information was immaterial to the defendant's guilt or innocence. Cf. State v. Tomanelli,153 Conn. 365, 373-74, 216 A.2d 625 (1966) (no requirement that entire day's radar graph reading be introduced in order for reading of defendant's speed to be admissible).
 II
The next issue raised by the defendant is whether the court erred in its interpretation of the law concerning the use of radar to support a conviction of speeding. General Statutes14-219c.[7] The gravamen of his claim is that the prosecution did not comply with the statutory criteria governing the admissibility of radar evidence. We disagree.
Initially, we note that 14-219c applies to convictions under 14-219 and the defendant, although originally charged with a violation of that section, was tried and convicted on a substitute information charging him with unreasonable speed in violation of 14-218a. It is clear from the transcript, however, that the court, in finding *Page 319 
the defendant guilty, relied upon the officer's testimony that the radar device clocked the defendant doing seventy-two miles per hour in a fifty-five zone. Thus, we must ascertain whether the provisions of 14-219c were satisfied.
The defendant contends that there was insufficient evidence that the police officer had "adequate training and experience" in the operation of the radar equipment. We do not agree. The officer testified that he had twenty hours of radar training at the state police academy and was certified as an operator of radar devices and that he had eight years experience in the operation of radar equipment. We conclude that that is sufficient to meet the first requirement of the statutes. "We have discovered no writer who states that the operation of police radar requires the technical knowledge of a radar scientist." State v. Tomanelli,153 Conn. 365, 371-72, 216 A.2d 625 (1966).
The defendant next argues that there was no proof that the radar device was functioning properly since the tuning forks used by the officer to test its accuracy were not themselves shown to be accurate at the time of his arrest. In support of this claim, the defendant cites State v. Tomanelli, supra. The language in Tomanelli upon which the defendant relies was discussed by this court in State v. Trantolo, 37 Conn. Sup. 601,605, 430 A.2d 465 (1981): "The defendant has attacked the sufficiency of this evidence to prove the accuracy of the radar unit, relying upon dictum in State v. Tomanelli, supra, 372, that `the tuning forks themselves must be shown to be accurate if they are to be accepted as a valid test of the accuracy of the radar instrument.' To the extent that this statement may imply that a test of the accuracy of a tuning fork is necessary as a further check upon the radar device before its reading becomes admissible, we do not agree. A tuning fork is a two-pronged metal implement not *Page 320 
affected by moderate differences of temperature which vibrates with a constant frequency when struck. Webster, Third New International Dictionary. The tuning fork referred to by the officer was stamped for fifty miles per hour, the speed corresponding to its frequency. Unlike some other measuring devices, it requires no adjustment. There is little more reason to require independent proof of its accuracy as a prerequisite to admissibility than for a ruler."
We conclude that the tuning fork tests conducted by the officer both before and after the defendant's arrest coupled with the independent testing of the device and the tuning forks three weeks after the incident were sufficient to satisfy the requirement of the statute.
Finally, the defendant contends that the device was not tested within a reasonable time after his arrest. As we previously noted, the device was tested for accuracy three weeks after the defendant's arrest and found to be working properly. We hold that this was a reasonable time.
 III
Finally, the defendant argues that the prosecutor misused his office by failing to disclose exculpatory information; to wit, the radar unit operation and set-up manuals. He claims, therefore, that the prosecutor deprived him of his constitutional right to due process. This claim has no merit.
"`Exculpatory' has been defined to mean `clearing, or tending to clear, from alleged fault or guilt.'" State v. Bowden, 29 Conn. Sup. 86,89, 272 A.2d 141 (1970). The manuals requested by the defendant in his motion, did not clear or tend to clear him from culpability for the offense. If anything, they went to the weight of the evidence against him. Where there is no obvious exculpatory character to information in the prosecutor's possession, "[t]he issue is whether the materiality of the *Page 321 
information is such as to impose a duty upon the prosecution on its own accord to turn that information over to the defense. In Moore v. Illinois, 408 U.S. 786, 795, 92 S.Ct. 2562,33 L.Ed.2d 706 (1972), it was noted that there is `no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.' `The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.' United States v. Agurs, [427 U.S. 97, 109-10, 96 S.Ct. 2392,49 L.Ed.2d 342 (1976)]." State v. De Santis, 178 Conn. 534,548, 423 A.2d 149 (1979). Accordingly, We conclude that there has been neither prosecutorial misconduct nor deprivation of the defendant's due process rights.
 There is no error.
In this opinion COVELLO and CIOFFI, Js., concurred.