STATE OF CONNECTICUT *v.* MILTON STOLL

APPELLATE SESSION OF THE SUPERIOR COURT

FILE NO. 1201

Argued January 18—decided April 8, 1983

*Milton Stoll,* pro se, the appellant (defendant).

*Peter J. Ponziani,* deputy assistant state's attorney, for the appellee (state).

DALY, J. The defendant was convicted by the trial court of traveling unreasonably fast in violation of

General Statutes § 14-218a.[1] From this judgment the defendant has appealed. The defendant has raised the following issues: (1) the court erred in reference to his motions for discovery; (2) the court erred in its interpretation of the law concerning the use of radar to support a conviction of speeding; and (3) the prosecutor misused his office by depriving the defendant of his legal and constitutional rights to obtain exculpatory material.[2]

The trial court found the following facts: On March 17, 1981, at approximately 5 p.m. the defendant was operating his 1979 Oldsmobile in an easterly direction on Route 2, a limited access public highway in the town of Marlborough. He was stopped by a state trooper and charged with speeding in violation of § 14-219. His speed had been clocked by radar at seventy-two miles per hour in a posted fifty-five miles per hour zone. Traffic was heavy at the time and the weather was clear.

On April 16, 1981, the defendant pleaded not guilty to a substitute information charging him with traveling unreasonably fast in violation of § 14-218a. On May 15, 1981, the defendant, who represented himself throughout the proceedings, filed a motion for discovery. After a hearing, the trial court ordered the state to supply the defendant with the make, model and date of manufacturer of the radar unit but denied the rest of the motion. Additional motions for discovery requesting the same information were subsequently filed and denied. Trial commenced on July 24, 1981.

---

[1] "[General Statutes] Sec. 14-218a. TRAVELING UNREASONABLY FAST. (a) No person shall operate a motor vehicle upon any public highway of the state . . . at a rate of speed greater than is reasonable, having regard to the width, traffic and use of the highway, road or parking area, the intersection of streets and weather conditions."

[2] In his brief, the defendant raises several other issues. We are limited in our consideration, however, to those issues set forth in the preliminary statement of issues. *Presutti* v. *Presutti,* 181 Conn. 622, 626, 436 A.2d 299 (1980).

The arresting officer had experience and training operating the radar equipment. The unit was calibrated by tuning forks forty-five minutes before the defendant was stopped and it was found to be accurate. It was tested by the same tuning forks two hours after the defendant was stopped and it was found to be accurate. Three weeks after the incident, both the tuning forks and the radar unit were successfully tested for accuracy.

I

The defendant first claims that the court erred in failing to grant his entire motion for discovery.[3] We do not agree.

The defendant asserts that the items requested in his motion were discoverable as a right under § 741[4] and, therefore, that the court erred in granting only a por-

---

[3] The original motion for discovery filed May 15, 1981, requested the following information: "(1) Identification record of the vehicle used by the officer, and the identification record of the radar equipment in said vehicle, the maker, age, Model No. of said radar equipment. The maintenance and calibration record of the particular radar equipment; (2) The manufacturer's operational and set-up manuals of the particular radar set used; (3) The training record of the officer on the specific equipment; (4) A full description of the location of the officer's vehicle, and the orientation of his radar equipment relative to the parkway (angles and elevation). How he identified my vehicle as the one he allegedly picked out with the radar; (5) The day's summons record of Tp. Santo [Franzo]. If he was assigned to the same location at the same hour on other days, the summons record of those days. The summons record of other Troopers who have been assigned to this location at approximately the same time."

In addition, the defendant filed two subsequent motions, seeking the same information. He assigns error in the court's failure to grant those motions. We need not consider this claim, however, since our ruling on the original motion is dispositive.

[4] "[Practice Book] Sec. 741.——INFORMATION AND MATERIALS DISCOVERABLE BY DEFENDANT AS OF RIGHT

"Upon a written motion made by a defendant within ten days after the entry of a plea, the prosecuting authority, within the time set by the judicial authority, shall disclose in writing the existence of and allow the defendant to inspect, copy, photograph and have reasonable tests made on any of the following relevant materials:

tion of the motion. After reviewing the transcript of the trial,[5] we conclude that the defendant was not entitled to the items requested and find no error in the denial.

Paragraph one of the motion sought the identification records of the vehicle and radar equipment, the manufacturer, age, model number and maintenance and calibration record of the radar device. The court ordered the state to disclose the manufacturer, age and

"(1) Exculpatory information or materials;

"(2) Books, tangible objects, papers, photographs, or documents obtained from or belonging to the defendant;

"(3) Adequately identified books, tangible objects, papers, photographs, or documents which are within the possession, custody, or control of any state agency, and which are material to the preparation of the defense or are intended for use by the prosecuting authority as evidence in chief at the trial;

"(4) Copies of records or reports of physical or mental examinations of the defendant made in connection with the offense charged which are within the possession, custody, or control of any state agency, the existence of which is known, or by the exercise of due diligence may become known, to the prosecuting authority, and which are obtainable with the permission of the defendant;

"(5) Copies of the defendant's prior criminal record, if any, which are within the possession, custody, or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the prosecuting authority;

"(6) Copies of results or reports of scientific tests, experiments or comparisons made in connection with the particular case which are known to and obtainable by the prosecuting authority and within the possession, custody, or control of any governmental agency, and which are material to the preparation of the defense or are intended for use by the prosecuting authority as evidence in chief at the trial; or

"(7) Buildings, places, or portions thereof, which are in the possession, custody, or control of any governmental agency and which are material to the defense or about which the prosecuting authority intends to introduce evidence in chief at the trial.

"In addition to the foregoing, the defendant shall be entitled to disclosure of exculpatory materials in accordance with any applicable constitutional and statutory provisions."

[5] " 'A trial tests the court's ruling on a motion for disclosure, for it then appears whether the mover was hampered, in the preparation and presentation of his case, by the denial of the motion.' " *State* v. *Anonymous (1971–17)*, 6 Conn. Cir. Ct. 560, 563, 279 A.2d 738 (1971).

model number but denied the remainder of the request. Nothing in the transcript indicates that the lack of that information hampered the defendant in preparing his defense. The supervisor of the state police radio division appeared as a defense witness and brought those records to court. He was questioned extensively with respect to the maintenance and operation of the particular device and there was no evidence that the equipment was improperly maintained or calibrated.

The second paragraph sought the radar manufacturer's operational and set-up manuals. The court stated that once the defendant knew the manufacturer and model number of the radar device, he could obtain the requested manuals from the manufacturer since the state was not required to prepare the defendant's case. We find no error in this ruling.

Paragraph three sought the radar training record of the arresting officer. The officer testified at trial that no such records are kept. In order to obtain disclosure, the information sought must be in the possession of a state agency. Practice Book § 741.

The fourth paragraph requested a description of the location of the officer's vehicle and orientation of the radar device and an explanation of how the officer identified the defendant's vehicle. As the court noted at the hearing on the motion, those are matters which are properly the subject of cross-examination of the officer at trial and are not subject to pretrial motions for discovery. Practice Book § 746 (1).[6] Finally, the motion

---

[6] "[Practice Book] Sec. 746.——INFORMATION NOT SUBJECT TO DISCLOSURE

"Except for the substance of any exculpatory material contained herein, Sec. 740 does not authorize or require disclosure or inspection of:

"(1) Reports, memoranda or other internal documents made by a prosecuting authority or by law enforcement officers in connection with the investigation or prosecution of the case:

"(2) Statements made to prosecuting authorities or law enforcement officers except as provided in Sec. 748;

"(3) Legal research;

sought the arresting officer's summons record for the date on which the defendant was arrested and for any other day on which the officer was assigned to the same location. We find no error in the court's denial of this request since this information was immaterial to the defendant's guilt or innocence. Cf. *State* v. *Tomanelli,* 153 Conn. 365, 373–74, 216 A.2d 625 (1966) (no requirement that entire day's radar graph reading be introduced in order for reading of defendant's speed to be admissible).

## II

The next issue raised by the defendant is whether the court erred in its interpretation of the law concerning the use of radar to support a conviction of speeding. General Statutes § 14-219c.[7] The gravamen of his claim is that the prosecution did not comply with the statutory criteria governing the admissibility of radar evidence. We disagree.

Initially, we note that § 14-219c applies to convictions under § 14-219 and the defendant, although originally charged with a violation of that section, was tried and convicted on a substitute information charging him with unreasonable speed in violation of § 14-218a. It is clear from the transcript, however, that the court, in finding

"(4) Records, correspondence, reports or memoranda to the extent that they contain the opinions, therories or conclusions of a prosecuting authority."

[7] "[General Statutes] Sec. 14-219c. USE OF RADAR TO SUPPORT A CONVICTION. A prima facie presumption of accuracy sufficient to support a conviction under section 14-219 will be accorded to radar only upon testimony by a competent police officer that: (1) The police officer operating the device has adequate training and experience in its operation; (2) the radar device was in proper working condition at the time of the arrest, established by proof that suggested methods of testing the proper functioning of the device were followed; (3) the device was used in an area where road conditions provide a minimum possibility of distortion; (4) as to moving radar, the speed of the patrol car was verified; and (5) the radar device was expertly tested within a reasonable time following the arrest, and such testing was done by means which do not rely on the internal calibrations of such radar device."

the defendant guilty, relied upon the officer's testimony that the radar device clocked the defendant doing seventy-two miles per hour in a fifty-five zone. Thus, we must ascertain whether the provisions of § 14-219c were satisfied.

The defendant contends that there was insufficient evidence that the police officer had "adequate training and experience" in the operation of the radar equipment. We do not agree. The officer testified that he had twenty hours of radar training at the state police academy and was certified as an operator of radar devices and that he had eight years experience in the operation of radar equipment. We conclude that that is sufficient to meet the first requirement of the statutes. "We have discovered no writer who states that the operation of police radar requires the technical knowledge of a radar scientist." *State* v. *Tomanelli,* 153 Conn. 365, 371–72, 216 A.2d 625 (1966).

The defendant next argues that there was no proof that the radar device was functioning properly since the tuning forks used by the officer to test its accuracy were not themselves shown to be accurate at the time of his arrest. In support of this claim, the defendant cites *State* v. *Tomanelli,* supra. The language in *Tomanelli* upon which the defendant relies was disussed by this court in *State* v. *Trantolo,* 37 Conn. Sup. 601, 605, 430 A.2d 465 (1981): "The defendant has attacked the sufficiency of this evidence to prove the accuracy of the radar unit, relying upon dictum in *State* v. *Tomanelli,* supra, 372, that 'the tuning forks themselves must be shown to be accurate if they are to be accepted as a valid test of the accuracy of the radar instrument.' To the extent that this statement may imply that a test of the accuracy of a tuning fork is necessary as a further check upon the radar device before its reading becomes admissible, we do not agree. A tuning fork is a two-pronged metal implement not

affected by moderate differences of temperature which vibrates with a constant frequency when struck. Webster, Third New International Dictionary. The tuning fork referred to by the officer was stamped for fifty miles per hour, the speed corresponding to its frequency. Unlike some other measuring devices, it requires no adjustment. There is little more reason to require independent proof of its accuracy as a prerequisite to admissibility than for a ruler.''

We conclude that the tuning fork tests conducted by the officer both before and after the defendant's arrest coupled with the independent testing of the device and the tuning forks three weeks after the incident were sufficient to satisfy the requirement of the statute.

Finally, the defendant contends that the device was not tested within a reasonable time after his arrest. As we previously noted, the device was tested for accuracy three weeks after the defendant's arrest and found to be working properly. We hold that this was a reasonable time.

### III

Finally, the defendant argues that the prosecutor misused his office by failing to disclose exculpatory information; to wit, the radar unit operation and set-up manuals. He claims, therefore, that the prosecutor deprived him of his constitutional right to due process. This claim has no merit.

'' 'Exculpatory' has been defined to mean 'clearing, or tending to clear, from alleged fault or guilt.' '' *State* v. *Bowden,* 29 Conn. Sup. 86, 89, 272 A.2d 141 (1970). The manuals requested by the defendant in his motion, did not clear or tend to clear him from culpability for the offense. If anything, they went to the weight of the evidence against him. Where there is no obvious exculpatory character to information in the prosecutor's possession, "[t]he issue is whether the materiality of the

information is such as to impose a duty upon the prosecution on its own accord to turn that information over to the defense. In *Moore* v. *Illinois,* 408 U.S. 786, 795, 92 S. Ct. 2562, 33 L. Ed. 2d 706 (1972), it was noted that there is 'no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.' 'The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.' *United States* v. *Agurs,* [427 U.S. 97, 109–10, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)]." *State* v. *DeSantis,* 178 Conn. 534, 548, 423 A.2d 149 (1979). Accordingly, we conclude that there has been neither prosecutorial misconduct nor deprivation of the defendant's due process rights.

There is no error.

In this opinion COVELLO and CIOFFI, Js., concurred.